**Kelli Lyn METZ, Plaintiff–Appellee and Cross–Appellant,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant–Appellant and Cross–Appellee.**

Nos. 91–6285, 91–6292, 91–6315, 92–6048 and 92–6064.

United States Court of Appeals, Tenth Circuit.

Nov. 8, 1994.

she was pregnant; and (2) the amount of attorney's fees awarded to Metz was excessive. Metz cross-appeals the district court's denial of her claim for lost fringe benefits.

Submitted on the briefs: *

Jim T. Priest and Dixie L. Coffey of McKinney, Stringer & Webster of Oklahoma City, OK, on the briefs, for plaintiff-appellee/cross-appellant Kelli Lyn Metz.

Bruce W. Day, Rodney J. Heggy and Stuart W. Emmons of Day, Hewett & Federman, Oklahoma City, OK, on the briefs, for defendant-appellant/cross-appellee Merrill Lynch, Pierce, Fenner & Smith, Inc.

Before HOLLOWAY, McKAY, and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) appeals from a judgment for $53,746.67 plus attorney's fees. The judgment was entered in favor of plaintiff Kelli Lyn Metz (Metz) on her Title VII claim of unlawful discrimination and discharge due to her pregnancy. *See* 42 U.S.C. § 2000e.[1] After a bench trial on the Title VII claim, the district court entered findings and conclusions upholding Metz' claim and awarded recovery for her on her claim and attorney's fees. Our jurisdiction rests on 28 U.S.C. § 1291.

On appeal, Merrill Lynch asserts that a change in the law requires a remand for arbitration of Metz' Title VII claim. In the alternative, Merrill Lynch claims the following errors occurred at trial: (1) Metz failed to establish a prima facie case, and even if she did, she did not carry her ultimate burden of persuasion that she was fired because

## I

Metz graduated from the University of Oklahoma in December 1982 with a degree in finance. In May 1983 she went to work for Merrill Lynch as a sales assistant, basically a secretarial position, in Merrill Lynch's Oklahoma City office. In January 1984 Metz became a financial consultant, also known as an account executive or stock broker, and held that position until she was discharged on September 12, 1988.

Merrill Lynch measured the performance of its brokers by commissions earned or production. Metz' production was generally lower than that of other brokers with similar lengths of service, but she was recognized as having sufficient production in 1985 and 1986. However, because of poor production, Metz was placed on probation in 1987 and 1988.

In late August of 1988 Metz informed Merrill Lynch's management personnel that she was pregnant. When Metz' immediate supervisor learned she was pregnant, he cautioned Metz that others who had taken maternity leave had not kept up their production upon return to work, or had not returned to work at all. The supervisor also informed Metz that he would decide how to redistribute her accounts during her leave, a deviation from other leaves in which the broker made the decision on how his or her accounts would be treated.

On September 12, 1988, Metz had a heated discussion with her immediate supervisor about a problem with one of Metz' accounts. Shortly thereafter, Metz was fired.

* The parties have agreed that this case may be submitted for decision on the briefs. *See* Fed. R.App.P. 34(f); 10th Cir.R. 34.1.2. The case is therefore ordered submitted without oral argument.

1. The Pregnancy Discrimination Act of 1978 in 42 U.S.C. § 2000e(k) defines the terms "because of sex" or "on the basis of sex" to include pregnancy, childbirth or related medical conditions, *inter alia,* and mandates that women affected by pregnancy shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected.

   Plaintiff's complaint also included claims brought under ERISA, 29 U.S.C. § 1140, and state common law. Plaintiff voluntarily dismissed those claims after the district court ordered the parties to arbitrate them. Those claims are not before us.

## II

Because the procedural chronology of this litigation is crucial, we will detail its development:

On September 5, 1989, Metz filed a complaint asserting Title VII, ERISA, and state common law claims in the district court. On September 27, 1989, Merrill Lynch made a timely motion to compel arbitration of these claims and to stay the district court's proceedings. The request for arbitration was based on Metz's registration as a broker with the National Association of Securities Dealers (NASD). Metz's registration application, which she signed, contained a clause requiring her to arbitrate all claims or disputes between her and Merrill Lynch.

On March 8, 1990, the district court granted in part and denied in part Merrill Lynch's motion to compel arbitration. The court compelled Metz's ERISA and common law claims to go to arbitration but held, citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), that Title VII claims are not subject to compulsory arbitration. In *Alexander* the Supreme Court, in a unanimous opinion, stated that "[a]rbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII." *Id.* at 56, 94 S.Ct. at 1023. Accordingly, the district court declined to compel Metz's Title VII claim to be arbitrated. Merrill Lynch filed a motion for reconsideration, which was denied.

In May 1990 Merrill Lynch, pursuant to 9 U.S.C. § 15 of the Federal Arbitration Act (FAA), which has since been redesignated § 16 by Pub.L. No. 101–650, Title III, § 325(a)(1), Dec. 1, 1990, Stat. 5120, appealed from the district court's March 8, 1990, order denying arbitration of the Title VII claim.[2]

However on August 15, 1990, Merrill Lynch filed a motion to dismiss that interlocutory appeal because a number of circuits had held that "Title VII claims were not arbitrable." Brief of Appellant/Cross–Appellee at 4 n. 2.[3] On August 24, 1990, we entered an order dismissing that appeal. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 90–9166, slip op. (10th Cir. August 24, 1990).

A bench trial was held on June 10 and 11, 1991, and on July 8, 1991, the district court entered judgment in favor of Metz on her Title VII claim for $53,746.67. On August 7, 1991, Merrill Lynch filed a notice of appeal from that judgment pursuant to 28 U.S.C. § 1291. Following the district court's denial on August 7, 1991, of its "Motion for Order Nunc Pro Tunc or in the Alternative to Alter or Amend the Judgment", Merrill Lynch on August 16 filed another notice of appeal from the final judgment.

On September 17, 1991, Merrill Lynch filed a Rule 60(b)(6) motion to vacate the judgment due to a change in the law and again sought to compel arbitration of the Title VII claim. This motion was denied by the district court on January 14, 1992. Shortly thereafter, Merrill Lynch made a motion for reconsideration of that ruling, which was denied on January 28, 1992. On January 30, 1992, Merrill Lynch appealed from the district court's order denying its Rule 60(b)(6) motion.

## III

On appeal, Merrill Lynch says this case should be remanded for arbitration of Metz's Title VII claims because the law has changed since it moved for dismissal of its interlocutory appeal from the district judge's March 8, 1990 denial of arbitration of the Title VII claim. Merrill Lynch argues that Title VII claims are now subject to compulsory arbi-

---

**2.** 9 U.S.C. § 16 provides in part:

**§ 16. Appeals**
(a) An appeal may be taken from—
  (1) an order—
  (A) refusing a stay of any action under section 3 of this title,

  (B) denying a petition under section 4 of this title to order arbitration to proceed,
  (C) denying an application under section 206 of this title to compel arbitration, . . . .

**3.** Merrill Lynch did not provide citations in its brief of the cases it was relying on.

tration, relying on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), decided May 13, 1991, some four weeks before the June 10–11, 1991 trial of Metz' Title VII case, *inter alia*. *Gilmer* held that age discrimination claims are subject to mandatory arbitration. *Id.* at 35, 111 S.Ct. at 1657. One week later, on May 20, the Court remanded for reconsideration in light of *Gilmer* the case of *Alford v. Dean Witter Reynolds, Inc.*, 712 F.Supp. 547 (S.D.Tex.1989), *aff'd*, 905 F.2d 104 (5th Cir. 1990), *cert. granted, judgment vacated, and case remanded*, 500 U.S. 930, 111 S.Ct. 2050, 114 L.Ed.2d 456, *rev'd on remand*, 939 F.2d 229 (5th Cir.1991), *Alford* being a Title VII sex discrimination and sexual harassment case.

■ On remand in *Alford* the Fifth Circuit held that Title VII claims, like age discrimination claims, are subject to mandatory arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir.1991). We agree with the Fifth Circuit in that respect. *Accord Hirras v. Nat'l R.R. Passenger Corp.*, 10 F.3d 1142, 1146 (5th Cir.), *cert. granted, judgment vacated on other grounds, and case remanded*, — U.S. —, 114 S.Ct. 2732, 129 L.Ed.2d 855 (1994); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir.1992); *Mago v. Shearson Lehman Hutton Inc.*, 956 F.2d 932, 935 (9th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 312 (6th Cir.1991). "Any broad public policy arguments against such a conclusion were necessarily rejected by *Gilmer*." *Alford*, 939 F.2d at 230. *Gilmer* noted that "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." 500 U.S. at 26, 111 S.Ct. at 1652.

*Gilmer* also held that *Alexander*, which was relied on by the district judge in this case in denying Merrill Lynch's motion to compel arbitration, is factually distinguishable for several reasons, including: the *Alexander* Court did not have before it the issue whether an agreement to arbitrate statutory claims is enforceable; "[r]ather, [*Alexander*] involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims[ ]"; the *Alexander* Court, unlike the *Gilmer* Court, was confronted with the issue of arbitration in the context of a collective bargaining agreement where claimants were represented by unions, and as such, there was a concern in that case for the tension between collective representation and individual statutory rights; and *Gilmer* was a Federal Arbitration Act case, while *Alexander* was not. 500 U.S. at 35, 111 S.Ct. at 1657. *See also Livadas v. Bradshaw*, — U.S. —, —, n. 21, 114 S.Ct. 2068, 2080 n. 21, 129 L.Ed.2d 93 (1994).[4] *Gilmer* also explicitly acknowledged that the *Alexander* Court's view that "arbitration [is] inferior to the judicial process for resolving statutory claims[ ]" has been "undermined" by subsequent Supreme Court cases. 500 U.S. at 33 n. 5, 111 S.Ct. at 1656 n. 5.

Our reading of *Gilmer*, and the inferences that, in light of *Gilmer*'s reasoning, can be drawn from the Court's vacating and remanding *Alford*, support the conclusion that Title VII claims are subject to compulsory arbitration. Applying the same compulsory arbitration principles in ADEA and Title VII cases is consistent with our earlier observation in *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544 (10th Cir.1988), that "Congress closely modeled the ADEA upon Title VII" and that "[t]he statutes are similar both in their aims and in their substantive prohibitions." *Id.* at 1553–54 (applying Title VII rule denying preclusive effect to prior arbitration award in ADEA case) (citing *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)).

---

4. We are mindful that the Supreme Court also noted in *Livadas* that "[i]n holding that an agreement to arbitrate an Age Discrimination in Employment Act claim is enforceable under the Federal Arbitration Act, *Gilmer* emphasized its basic consistency with our unanimous decision in [*Al-*

*exander*], permitting a discharged employee to bring a Title VII claim, notwithstanding his having already grieved the dismissal under a collective-bargaining agreement." — U.S. at — n. 21, 114 S.Ct. at 2080 n. 21 (citation omitted).

Having concluded that Title VII claims are in fact subject to compulsory arbitration, we must determine the effect of this holding on the appeals before us.

## IV

### A

■ Even if Title VII claims are subject to compulsory arbitration, Metz claims that because her employment contract with Merrill Lynch did not contain an arbitration clause, § 1 of the FAA precludes arbitration of her Title VII claim.[5] Metz's obligation to arbitrate, however, is not based on her employment contract with Merrill Lynch; rather, it is based on her application to register as a broker with the NASD.[6] Accordingly it is Metz' securities registration application, and not her employment contract, that created the duty to arbitrate. As the Court noted in *Gilmer:*

> [T]he arbitration clause at issue is in Gilmer's securities registration application, which is a contract with the securities exchanges, not with Interstate. The lower courts addressing the issue uniformly have concluded that the exclusionary clause in § 1 of the FAA is inapplicable to arbitration clauses contained in such registration applications.... We implicitly assumed as much in *Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), where we held that the FAA required a former employee of a securities firm to arbitrate his statutory wage claim against his former employer, pursuant to an arbitration clause in his registration application. Unlike the dissent, *see post,* at 1659–

1660, we choose to follow the plain language of the FAA and the weight of authority, and we therefore hold that § 1's exclusionary clause does not apply to Gilmer's arbitration agreement.

*Gilmer,* 500 U.S. at 23–26 n. 2, 111 S.Ct. at 1651–52 n. 2 (citations omitted). Hence we hold that Metz's Title VII claim is not precluded from arbitration by § 1 of the FAA.

### B

Metz presses a further objection that Merrill Lynch has waived its right to request arbitration because it "engaged in litigation, [took] advantage of discovery and defended the substantive issues in dispute" in the proceedings below, Brief of Appellee/Cross–Appellant at 27, and because Merrill Lynch voluntarily dismissed its interlocutory appeal from the March 1990 denial of arbitration of the Title VII dispute. Merrill Lynch, on the other hand, argues that it preserved the issue of the arbitrability of Metz's Title VII claim in a joint pretrial order entered by the district court on June 7, 1991. There the parties stipulated that "[t]he Court has jurisdiction of the parties and of the subject matter, subject to Defendant's right to arbitration in the event of a change in the law." Pretrial Order at 2. Thus we must determine the effect of Merrill Lynch's litigation activities, its dismissal of its interlocutory appeal, and the stipulation in the pretrial order.

■ We begin with the recognition that there is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration. *See Peterson*

---

**5.** 9 U.S.C. § 1 provides in part that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

**6.** Paragraph 3744 of the NASD Manual states in pertinent part that:

> It may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Article III, Section 1 of the Rules of Fair Practice for a member or a person

associated with a member to fail to submit a dispute for arbitration under the Code of Arbitration Procedure as required by that Code, or to fail to appear or to produce any document in his possession or control as directed pursuant to provisions of the Code of Arbitration Procedure, or to fail to honor an award of arbitrators properly rendered pursuant to the Code of Arbitration Procedure where a timely motion has not been made to vacate or modify such award pursuant to applicable law.

*v. Shearson/American Express,* 849 F.2d 464, 465 (10th Cir.1988) ("There is a strong federal policy favoring arbitration for dispute resolution.") (citing *Perry v. Thomas,* 482 U.S. 483, 489–90, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987)). Nevertheless "the right to arbitration, like any other contract right, can be waived." *Reid Burton Constr. Inc. v. Carpenters Dist. Council of S. Colo.,* 614 F.2d 698, 702 (10th Cir.) (citation omitted), *cert. denied,* 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980). *Accord Peterson,* 849 F.2d at 465–66 ("When a contract mandates arbitration, courts generally will enforce the arbitration clause *absent a waiver.*") (citations omitted) (emphasis added). In determining whether a party has waived its right to arbitration, we examine the following factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Peterson,* 849 F.2d at 467–68 (citing *Reid Burton,* 614 F.2d at 702).

It is undisputed that Merrill Lynch made a timely initial request on September 27, 1989, for arbitration in the district court. The court denied Merrill Lynch's motion on March 8, 1990, as to the Title VII claims. Merrill Lynch made a timely motion for reconsideration, which was denied on April 6, 1990. Merrill Lynch commenced a timely interlocutory appeal on May 4, 1990. However, since Merrill Lynch dismissed that appeal, we must determine the effect of that dismissal and the other conduct of Merrill Lynch.

First, we agree with the view that "[f]ailure to take an authorized appeal from an interlocutory order does not preclude raising the question on appeal from the final judgment." *Drayer v. Krasner,* 572 F.2d 348, 353 (2d Cir.), *cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978); *Clark v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 924 F.2d 550, 553 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 74, 116 L.Ed.2d 48 (1991); *cf. Allen v. Hadden,* 738 F.2d 1102, 1106 (10th Cir.1984). Moreover, we have held that where a party "almost certainly" could not have obtained an order for arbitration before a change in the controlling precedent, there was no waiver of the right to arbitrate by not seeking arbitration. *Peterson v. Shearson/American Express,* 849 F.2d at 466. Here the arbitrability of Title VII claims was an open question in our circuit when Merrill Lynch dismissed its interlocutory appeal of the denial of its motion to arbitrate the Title VII claims. Other circuits which had addressed the question had concluded that no such right existed, relying on *Alexander.* *E.g., Alford v. Dean Witter Reynolds, Inc.,* 905 F.2d 104 (5th Cir.1990), *vacated,* 500 U.S. 930, 111 S.Ct. 2050, 114 L.Ed.2d 456 (1991); *Utley v. Goldman Sachs & Co.,* 883 F.2d 184 (1st Cir.1989), *cert. denied,* 493 U.S. 1045, 110 S.Ct. 842, 107 L.Ed.2d 836 (1990); *Swenson v. Management Recruiters International, Inc.,* 858 F.2d 1304 (8th Cir.1988), *cert. denied,* 493 U.S. 848, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989). In these circumstances, we feel that Merrill Lynch's dismissal in August 1990 of the interlocutory appeal, without more, did not constitute a waiver of its right to seek arbitration. *Peterson v. Shearson/American Express,* 849 F.2d at 466; *Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691, 695–97 (9th Cir.1986).

However, this does not end our waiver analysis. The relevant law, while clearly adverse to Merrill Lynch in August 1990,

changed before the June 1991 trial in this case. As noted, on May 13, 1991 the Supreme Court decided *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and a week later vacated and remanded the Fifth Circuit's decision in *Alford v. Dean Witter Reynolds, Inc.*, 905 F.2d 104 (5th Cir.1990) (finding no right to compel arbitration in Title VII cases) with instructions for reconsideration in light of *Gilmer*. *See* 500 U.S. 930, 111 S.Ct. 2050, 114 L.Ed.2d 456. In *Gilmer*, the Court affirmed the Fourth Circuit's decision that ADEA claims are subject to compelled arbitration. The Court explicitly eschewed its prior "mistrust of the arbitral process", emphasizing instead the "liberal federal policy favoring arbitration agreements" reflected in the Federal Arbitration Act, 9 U.S.C. §§ 1–16. 500 U.S. at 33 n. 5, 35, 111 S.Ct. at 1656 n. 5, 1657.

The Supreme Court's actions in *Gilmer* and *Alford* clearly signaled a change in the law governing the arbitrability of Title VII claims, giving Merrill Lynch, several weeks before the trial of Metz' claim, solid grounds to renew below its demand for arbitration. Indeed, in its reply brief in this court, p. 4, Merrill Lynch itself stated that "the remand of *Alford I* makes it clear that the standard [for determining arbitrability of Title VII claims] is now set forth in *Gilmer v. Interstate/Johnson Lane Corp* . . . . " [7] While Merrill Lynch asserts in its brief in chief before us, p. 6, that it filed its motion on September 17, 1991 to vacate the judgment below "after becoming aware of new Supreme Court and circuit cases which held or indicate that Title VII claims are subject to arbitration," at the time *Gilmer* was decided in May 1991, Merrill Lynch was aware of its significance, having previously relied on the Fourth Circuit's "well reasoned [Gilmer] opinion," in support

of its March 1990 motion for reconsideration of the initial motion to compel arbitration. Brief in Chief of Appellant at 38–39 n. 33. Nonetheless, following the May 13, 1991 decision in *Gilmer* and the May 20 remand in *Alford*, Merrill Lynch waited until after trial and after the Fifth Circuit predictably reversed itself in *Alford*, 939 F.2d 229, to reassert its right to arbitrate. The record does not show that Merrill Lynch gave any indication to the district court either in the June 7, 1991 pretrial stipulation, noted earlier, or otherwise, that a change in the law had occurred as represented by *Gilmer* and the *Alford* remand until September 17, 1991— some three months after the trial. *See* Motion to Vacate Judgment, I App. 230–35; Brief in Chief of Appellant Merrill Lynch at 6.

We are persuaded that the totality of Merrill Lynch's conduct constituted waiver of its right to compel arbitration. *E.g., Peterson*, 849 F.2d at 467–68 (factors indicating waiver include actions inconsistent with right to arbitrate, substantial invocation of litigation machinery, delay in seeking stay, important intervening steps (*e.g.*, discovery), and prejudice to opponent); *Reid Burton*, 614 F.2d at 702. Accordingly we find no error in the district court's denial of arbitration.

## V

Merrill Lynch also appeals the district court's denial of its Rule 60(b)(6) motion to vacate.[8] As noted earlier, following the Supreme Court's decision in *Gilmer*, and the Fifth Circuit's opinion on remand in *Alford*, Merrill Lynch on September 17, 1991, moved the district court pursuant to Federal Rule of Civil Procedure 60(b)(6) to vacate its July 8, 1991 judgment, to vacate the portion of its March 8, 1991 order holding that Metz's Title

---

7. That reply brief of Merrill Lynch further stated, p. 4: "Metz' argument that *Alexander* still represents the law generally applicable to Title VII cases is no longer supportable. The remand of *Alford I*, if nothing else, makes that clear."

8. Federal Rule of Civil Procedure 60 states in pertinent part that:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment.

VII claim is not subject to compulsory arbitration, and to compel arbitration of that claim. We review the district court's ruling on the Rule 60(b)(6) motion for abuse of discretion. *Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696, 702 (10th Cir.1989) (citations omitted).

We find no abuse of discretion in the denial of Merrill Lynch's Rule 60(b)(6) motion. The motion sought to resuscitate Merrill Lynch's demand for arbitration by another procedure based on the change in the law represented by the Supreme Court's *Gilmer* opinion, its *Alford* remand, and the Fifth Circuit's reversal of itself in *Alford.*[9] We have already explained why the conduct of Merrill Lynch waived its right to compel arbitration. That being the case, the denial below of the Rule 60(b)(6) motion was not an abuse of discretion and Merrill Lynch's appeal of that ruling can fare no better than its other appellate arguments seeking arbitration.

In sum there was no error in the denial of Merrill Lynch's Rule 60(b)(6) motion.

## VI

■■■ Merrill Lynch maintains that Metz failed to establish a prima facie case of discrimination under Title VII.[10] However where the case has been fully tried, as here, the first two steps of the *McDonnell Douglas*

analysis are irrelevant. *Sorensen v. City of Aurora,* 984 F.2d 349, 352 (10th Cir.1993). We only consider the ultimate question whether Metz proved that Merrill Lynch intentionally discriminated against her. *Id.* at 352. The district judge found for Metz and that ruling is now challenged by Merrill Lynch. While our review of legal rulings is *de novo,* "[o]ur review of the district court's factual findings is limited to determining whether they are clearly erroneous." *EEOC v. Ackerman, Hood & McQueen, Inc.,* 956 F.2d 944, 946 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992); *see* Fed.R.Civ.P. 52(a). A finding of fact is clearly erroneous when

> although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.... This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (internal quotations and citations omitted).

There is evidence suggesting, as Merrill Lynch contends, that Metz was fired because she was a poor producer and insubordinate.[11] However, there is also evidence supporting

---

9. "In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under Fed.R.Civ.P. 60(b)(6)." *Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d at 702 (citing *Pierce v. Cook & Co.,* 518 F.2d 720, 722–24 (10th Cir.1975), *cert. denied,* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976)); *but cf. Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America,* 962 F.2d 1528, 1531, 1535 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 414, 121 L.Ed.2d 337 (1992) (Rule 60(b) relief not justified by intervening decision of state supreme court); *Collins v. City of Wichita, Kansas,* 254 F.2d 837, 839 (10th Cir.1958) (change in law on validity of state statute, caused by intervening United States Supreme Court decision, not grounds for Rule 60(b) relief). Here, the dispositive basis for upholding the denial of Rule 60(b)(6) relief is the waiver by Merrill Lynch of the right to compel arbitration, as explained earlier in the text.

10. Title VII prohibits discrimination with respect to terms, conditions, or privileges of employment on the basis of an employee's sex. 42 U.S.C. § 2000e–2(a)(1). The Pregnancy Discrimination Act makes it clear that Title VII's prohibition against sex discrimination includes pregnancy, childbirth, and related medical conditions. 42 U.S.C. § 2000e(k).

11. This evidence includes, *inter alia,* the following: (1) Quinton Ellis, Resident Vice President of Merrill Lynch's Oklahoma City office, testified that Metz was fired because she was a poor producer, Deposition of Quinton Ellis at 70; (2) Metz was repeatedly counseled about her need to improve production, Appendix to Brief of Appellant/Cross-Appellee at 381, 402, 511; (3) the decision to terminate Metz was originally made in June of 1988 by Ellis, prior to the time Merrill Lynch had any knowledge of Metz's pregnancy; *id.* at 475–76; (4) Ellis had decided that he was

the finding that the "evidence shows that defendant's stated nondiscriminatory reason for firing Metz is not credible and that her pregnancy was part of Merrill Lynch's motivation in firing her." Opinion at 12. In the trial judge's summary at the conclusion of her opinion she stated that in accordance with her foregoing findings and conclusions, "the Court finds that plaintiff was discharged from her employment with Merrill Lynch by reason of her pregnancy, a violation of Title VII." Opinion at 16.[12] The judge found, Opinion at 5–6, that it was apparent that the general practice had never been, until Metz' case, to abruptly terminate a broker for poor production. And the judge also found that Merrill Lynch's "assertion that Metz' insubordination during her argument with McClean on the morning of her firing was the reason for her dismissal is totally without credibility." Opinion at 10–11.

"Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511 (emphasis added) (citations omitted). It was necessary for the district judge to make credibility determinations. Given her opportunity to observe the demeanor of the witnesses, Federal Rule of Civil Procedure 52(a) mandates that this court give "due regard ... to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a); *see also Anderson*, 470 U.S. at 574–75, 105 S.Ct. at 1511–12 (emphasizing "the special deference to be paid credibility determinations" under Rule 52(a)).

Having observed the witnesses at trial, the district court rejected Merrill Lynch's contention that Metz' "insubordination" during the argument with her supervisor was the reason for her dismissal; the judge found that the argument did not amount to insubordination. The district court also found that Merrill Lynch's reason for firing Metz, poor production, was a pretext for firing Metz, and further that Metz was treated differently than nonpregnant brokers. We are satisfied that the trial judge's findings are amply supported by the record.

## VII

■ Merrill Lynch also challenges the award of attorney's fees to Metz. A district court may award attorney's fees to the prevailing party in a Title VII action. 42 U.S.C. § 2000e–5(k). "Under the Title VII provision, a prevailing plaintiff 'ordinarily is to be awarded attorney's fees in all but special circumstances[.]'" *Fogerty v. Fantasy, Inc.*, — U.S. —, —, 114 S.Ct. 1023, 1034, 127 L.Ed.2d 455 (1994) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978)). We will not reverse a district court's award of fees to a prevailing party unless the award represents an abuse of discretion. *Homeward Bound, Inc. v. Hissom Memorial Ctr.*, 963 F.2d 1352, 1355 (10th Cir.1992) (citation omitted); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 980 (10th Cir.), *cert. denied*, 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990).

going to terminate Metz sometime around the 1st of September, but decided to delay it because she was pregnant, *id.* at 476; (5) Richard McClean, the sales manager of the Merrill Lynch's Oklahoma City office, testified that on his first day on the job in June of 1988, Ellis stated that he had it on his agenda to fire Metz, *id.* at 551.

12. This evidence includes, *inter alia*, the following: (1) normal procedures for dealing with production problems were not followed in Metz's case, Appendix to Brief of Appellant/Cross–Appellee at 494; (2) Ellis admitted at trial that if the manual applied to Metz's termination then she was not properly terminated under Merrill Lynch policy, *id.* at 488, 494; (3) McClean decided who would get Metz's accounts while she was away on maternity leave, not the financial consultant, Metz, as was usually the case at Merrill Lynch,

*id.* at 348–49; (4) Ellis stated to Metz that her termination had nothing to do with her argument with McClean, *id.* at 346; (5) Ellis admitted at trial that Metz's argument with McClean only accounted for approximately three percent of the termination decision, *id.* at 493; (6) there was testimony at trial that financial consultants who are not making it in the business are "counseled out of the business" (*i.e.*, the firm would let you know that you are not doing well, advise you that you would be happier and more successful somewhere else, give you time to find another job, etc.), *id.* at 341, 661–663; (7) there was testimony that Merrill Lynch never abruptly terminates anyone for performance reasons, only for misconduct, *id.* at 663.

▮ Merrill Lynch does not dispute Metz' entitlement to a fee award; it challenges only the amount of attorney's fees awarded. Merrill Lynch claims that because Metz' attorneys charged more per hour in this case than they charged to a different client in an unrelated case, the rates charged here are unreasonable. Merrill Lynch does not allege that the rates claimed in this case are higher than the reasonable and customary rates for this type of service in the area. The district court determined that the fees charged to a different client in an unrelated case are not binding here. "[A] district judge may turn to her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Bee v. Greaves,* 910 F.2d 686, 689 n. 4 (10th Cir. 1990) (citation omitted). We find no abuse of discretion in the district court's determination that the hourly rates charged by Metz' counsel were reasonable.

▮ Merrill Lynch also argues the fee award should be reduced because Metz abandoned her ERISA and state law claims, she did not prevail on her claims for front pay or fringe benefits, and she was denied permission to amend her pleadings to conform to the trial evidence of discrimination generally based on sex, but not limited to pregnancy. The lodestar is the presumptively reasonable fee, *Homeward Bound, Inc.,* 963 F.2d at 1355, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate", *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), but the lodestar may be adjusted upward or downward, *id.* at 434, 103 S.Ct. at 1939. One factor to consider in determining whether the lodestar amount should be adjusted is the result obtained. *Id.* (footnote omitted). In evaluating whether the lodestar amount should be adjusted when the prevailing party obtained only partial success, the court must consider two questions: (1) whether the claims on which the plaintiff did not prevail were related to those on which she did prevail; and (2) whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" *Id.*

The district court found that Metz' fee request did not include time spent pursuing the ERISA and state law claims, and that finding is not clearly erroneous. That Metz was not awarded all of the damages she sought and was not permitted after trial to include a general claim for sex discrimination does not undermine the validity of the attorney's fee award; Metz prevailed on her principal claim of pregnancy discrimination. We cannot say the district court abused its discretion by not reducing the fee award.

## VIII

▮ In its written opinion the district court awarded Metz damages for back pay, but denied front pay. The opinion did not address Metz' claim for lost fringe benefits. Metz filed a motion requesting the district court to amend the judgment to include an award for those benefits. The district court held Metz had not established her damages by the most accurate method possible and denied the motion. Metz now challenges the trial court's denial of fringe benefits by her cross-appeal. "Whether the district court failed to consider or accord proper weight or significance to relevant evidence are questions of law we review *de novo.*" *Harvey ex rel. Blankenbaker v. United Transp. Union,* 878 F.2d 1235, 1244 (10th Cir.1989) (citing *Pullman–Standard v. Swint,* 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982)), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990).

Lost fringe benefits are available under the remedial provisions of Title VII. *See* 42 U.S.C. § 2000e–5(g) (providing for back pay and any equitable relief that the court deems appropriate).[13]

▮ The burden is on the plaintiff to produce evidence to support her damages

---

13. *See also Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 957 (10th Cir.1980) (trial court has power to restore plaintiff "to the position that she would have likely enjoyed had it not been for the discrimination") (citations omitted); *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d

claim. *Cf. Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1147 (5th Cir.1991) (ADEA case); *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1554 (10th Cir.1988) (noting the similarity between the Title VII and ADEA statutes) (citing *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)). Although damages may not be based on speculation, "uncertainty in determining what an employee would have earned but for discrimination should be resolved against the employer." *See id.* (citations internal quotations omitted).

Here Metz testified that she had calculated her lost fringe benefits to be $15,411.50, based on information provided to her by Merrill Lynch. Aplt. App. Vol. 2 at 357.[14] Merrill Lynch neither objected to the evidence nor produced evidence to refute Metz' testimony.[15] Merrill Lynch emphasizes the absence of documentary evidence supporting Metz' testimony, but advances no authority for the proposition that Metz' own testimony cannot support her claim.

We conclude the district court erred when it failed to consider Metz' damages claim for lost fringe benefits on the ground that her proof was too speculative. Metz' own testimony provided adequate evidence for consideration of the claim. Therefore, the denial of Metz' request for lost fringe benefits is reversed and that claim is remanded for further consideration. *See Harvey,* 878 F.2d at 1244. The district judge may conduct further proceedings which she deems necessary

to resolve the issue. We express no opinion on the merits of the claim.

Accordingly the judgment is **AFFIRMED** in part, **REVERSED** in part, and the case is **REMANDED** for further proceedings consistent with this opinion.

918, 949 (10th Cir.1979) ("[T]he entire back pay concept constitutes equitable relief designed to restore and make whole the victims of discrimination.") (citations omitted); *Long v. Ringling Bros.–Barnum & Bailey Combined Shows, Inc.,* 9 F.3d 340, 343 (4th Cir.1993) ("Under Title VII a prevailing plaintiff is entitled to 'make whole' relief.... This may include the value of fringe benefits.") (citations omitted); *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 145 (2d Cir.1993) ("The purpose of back pay is to completely redress the economic injury the plaintiff has suffered as a result of discrimination.... This award should therefore consist of lost salary, including anticipated raises, and fringe benefits.") (internal quotations and citations omitted); *cert. denied,* — U.S. —, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Crabtree v. Baptist Hosp. of Gadsden, Inc.,* 749 F.2d 1501, 1502 (11th Cir. 1985) ("Because the object of the backpay provisions of Title VII is to make employees whole for losses suffered on account of unlawful discrimination, ..., fringe benefits should be included in backpay[.]") (citations omitted); *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 626 (6th Cir.1983) (holding that fringe benefits

should be awarded in Title VII cases because "[b]ackpay should completely redress the economic injury the claimant has suffered as a result of discrimination.") (citations omitted), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); *see generally Franks v. Bowman Transp. Co.,* 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976) (federal courts empowered to make whole the victims of discrimination).

**14.** In her post-trial motion, Metz requested total lost fringe benefits of $12,924.91, conforming to the district court's determination that Metz was entitled to damages for the period from September 12, 1988, to January 1, 1991, rather than for the longer period originally requested by Metz.

**15.** On appeal Merrill Lynch argues that Metz did not present the best evidence available on lost fringe benefits. Reply Brief at 12. The record shows no such objection below when Metz' evidence was presented.