**Linda L. POINDEXTER, Plaintiff,**

v.

**ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant.**

**Civil Action No. 94–2341–GTV.**

United States District Court,
D. Kansas.

Jan. 26, 1996.

---

Mark C. Beam–Ward, Hill, Beam–Ward & Kruse, LLC, Overland Park, KS, for plaintiff.

Stephen Phillips, Paul R. Hoferer, Nola Wright Viola, The A.T. & S.F. Ry. Co., Topeka, KS, Jack D. Rowe, Brian N. Woolley, Christine M. McKee, Lathrop & Gage, L.C., Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This case is before the court upon motion for summary judgment by defendant Atchi-

son, Topeka and Santa Fe Railway Company (Santa Fe) (Doc. 17). For the reasons stated below, the motion is denied.

## I. Background

Santa Fe hired plaintiff Linda L. Poindexter to work as a clerk at its Kansas City, Kansas office in June 1974. The plaintiff is a member of the Transportation Communication Union (union), which, under a previous name, entered into an "Implementing Agreement" with Santa Fe. Pursuant to this agreement, Poindexter maintains she was offered two options: to accept a clerical position in Topeka, Kansas, which included relocation compensation, or to terminate her employment with Santa Fe, which included severance compensation.[1] Employees accepting a position in Topeka, such as the plaintiff, received relocation compensation regardless of whether they actually moved. Poindexter chose not to move.[2]

The plaintiff began commuting to Topeka in June 1993. In July 1993, she requested a transfer back to the Kansas City office pursuant to Rule 13 of the collective bargaining agreement (agreement) between Santa Fe and the union. Rule 13 provides that employees wanting to transfer to another seniority district, who put that request in writing and who are sufficiently fit and able, will be given preference based upon seniority over nonemployees and employees not covered under the agreement. The parties dispute whether the plaintiff renewed her request in 1994 and 1995. No clerical positions qualifying for a Rule 13 transfer have been open since November 1993.

In October 1993, while driving back from vacation, Poindexter experienced her first panic attack. The second panic attack occurred the next day when the plaintiff was driving to work in Topeka. Poindexter sought medical attention and was diagnosed with major depression, panic disorder or agoraphobia, and separation anxiety.

In November 1993, Dr. David E. Sternberg, a psychiatrist, placed the plaintiff on medical leave of absence, the status she currently holds. Also that month Dr. Sternberg wrote Santa Fe, stating it would be in Poindexter's best medical interests to transfer to the Kansas City office. The plaintiff requested that Santa Fe allow her to transfer to the off-in-force extra board in Kansas City pursuant to Rule 5 of the agreement. Rule 13 of the agreement does not govern extra board employees, who fill in for absent employees and who are not guaranteed 40 hours of work weekly. Under Rule 5, off-in-force employees transferring to another seniority district retain their previous seniority.

In December 1993, Santa Fe's medical board approved Poindexter's requested transfer based upon her medical condition. In January 1994, after consulting the legal department, the medical board reversed its position. In August 1994, Poindexter filed suit against Santa Fe, alleging a violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The defendant subsequently filed this motion for summary judgment.

## II. Summary Judgment

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As further explained in the order, genuine issues of material fact exist.

## III. ADA

The ADA prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual. . . ." 42 U.S.C. § 12112(a). Employers are prohibited from discriminating

---

1. Santa Fe maintains Freight Office Roster employees, including the plaintiff, had a third option, namely, to go off-in-force. According to Poindexter, she became aware of the third option after she already had accepted a position in Topeka. The court must construe facts in favor of the nonmoving party.

2. Poindexter has lived in the Kansas City area her entire life and her husband owns a business in the area. The plaintiff received $28,040.00 in relocation compensation.

against such individuals with regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A).

■ It is the plaintiff's burden to establish that she is "disabled" and "qualified" to perform the essential functions of the job either with or without reasonable accommodation. *Dutton v. Johnson County Bd. of County Comm'rs.*, 859 F.Supp. 498, 504 (D.Kan.1994); *see Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir.1995). The defendant then has the burden either to rebut those claims or to establish that the reasonable accommodation required would create an undue hardship. In order to prevail on its summary judgment motion, the defendant must establish either that (1) the plaintiff is not disabled within the meaning of the statute, (2) the plaintiff is not qualified to perform the essential functions of the job, or (3) the only possible reasonable accommodation would create an undue hardship on the defendant.[3] *Dutton,* 859 F.Supp. at 505; *see White v. York Int'l. Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995).

■ Summary judgment on the "disabled," "qualified," or "undue hardship" issues is premature because the facts presented raise genuine issues of material fact.

### IV. Railway Labor Act

■ The defendant argues that the binding arbitration provisions of the Railway Labor Act (RLA) preempts the plaintiff from bringing suit under the ADA. Santa Fe and Poindexter's labor union entered into a collective bargaining agreement. Among other matters, the agreement outlines grievance procedures for disputes involving rates of pay, rules, and working conditions.

■ Congress enacted the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris,* — U.S. —, —, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994); *see Brotherhood of R.R. Trainmen v. Denver & Rio Grande Western R.R. Co.,* 290 F.2d 266, 268 (10th Cir.), *cert. denied,* 366 U.S. 966, 81 S.Ct. 1925, 6 L.Ed.2d 1256 (1961). The RLA "establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes." *Hawaiian Airlines, Inc.,* — U.S. at — – —, 114 S.Ct. at 2243–44 (quoting 45 U.S.C. § 151a). The first class, "major" disputes, concerns "rates of pay, rules or working conditions"; the second class, "minor" disputes, "grow[s] out of grievances or out of the interpretation or application of [collective bargaining] agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a; *see Consolidated Rail Corp. v. Railway Labor Executives. Ass'n.,* 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) ("major disputes seek to create contractual rights, minor disputes to enforce them"). "[T]he Supreme Court [has] held that the arbitral remedy provided under section 153 of the RLA is mandatory and exclusive for 'minor' disputes. Thus, if [an] action can be characterized as a 'minor' dispute, then the courts generally lack jurisdiction to hear it." *Davies v. American Airlines, Inc.,* 971 F.2d 463, 465 (10th Cir.1992) (citations omitted), *cert. denied,* 508 U.S. 950, 113 S.Ct. 2439, 124 L.Ed.2d 657 (1993). Santa Fe apparently considers the controversy at hand a "minor" dispute.

Citing 29 C.F.R.App. § 1630.15(d) (1995), the defendant contends that the reference to collective bargaining agreements found in the ADA-implementing regulations supports its RLA preemption argument. The contention

---

**3.** "Congress specifically intended that the case law established under the Rehabilitation Act be used in deciding cases brought under the ADA." *Dutton,* 859 F.Supp. at 504; *see* 42 U.S.C. § 12117(b) (same requirements under the Rehabilitation Act and the ADA should be construed consistently).

is not persuasive. Collective bargaining agreements are mentioned in the context of "undue hardship" as a defense to failing to make reasonable accommodation: "[A]n employer could demonstrate that the provision of a particular accommodation would be unduly disruptive to its other employees or to the functioning of its business. The terms of a collective bargaining agreement may be relevant to this determination." *Id.*

Santa Fe also relies upon *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488 (10th Cir.1994), in which the Tenth Circuit held that Title VII claims were subject to compulsory arbitration. In *Metz*, a stock broker sued her employer, Merrill Lynch, alleging Title VII, ERISA, and state common law claims. Shortly thereafter, Merrill Lynch filed a motion to compel arbitration based upon the stock broker's signed registration application with the National Association of Securities Dealers, which contained a provision requiring arbitration of all disputes between the stock broker and her employer. The district court found that Title VII claims were not subject to compulsory arbitration. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 56, 94 S.Ct. 1011, 1023, 39 L.Ed.2d 147 (1974) ("Arbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII.").

Merrill Lynch appealed, arguing that a change in the law now subjected Title VII claims to compulsory arbitration. *See Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer*, the Supreme Court addressed whether a claim brought pursuant to the Age Discrimination in Employment Act (ADEA) could be "subjected to compulsory arbitration pursuant to an arbitration agree-

ment in a securities registration application." *Id.* at 23, 111 S.Ct. at 1650. The *Gilmer* Court declared "it is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act]." *Id.* at 26, 111 S.Ct. at 1652. Quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985), the Court reasoned that "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652. Further, the *Gilmer* Court distinguished the *Alexander* line of cases, commenting that "those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims." *Id.* at 35, 111 S.Ct. at 1657.[4]

Santa Fe's reliance upon *Metz* is unpersuasive; *Metz* is distinguishable from the case at hand. Poindexter's ADA claim is independent of her rights under the collective bargaining agreement. Santa Fe does not argue that the collective bargaining agreement requires employees to submit individual statutory claims to arbitration. *See Hawaiian Airlines, Inc.*, —— U.S. at ——, 114 S.Ct. at 2246 ("we have held that the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the "[collective bargaining agreement]"); *Arnold v. Air Midwest, Inc.*, 877 F.Supp. 1452, 1460 (D.Kan. 1995) ("RLA's mechanism for resolving disputes does not pre-empt causes of action to enforce rights that are independent of the

---

4. Although the *Metz* court held that Title VII claims are subject to compulsory arbitration, 39 F.3d at 1488, the court concluded "that the totality of Merrill Lynch's conduct constituted waiver of its right to compel arbitration," *id.* at 1490. "[F]actors indicating waiver include actions inconsistent with the right to arbitrate, substantial invocation of litigation machinery, delay in seeking stay, important intervening steps (e.g., discovery), and prejudice to opponent." *Id.* (citing *Peterson v. Shearson/American Express, Inc.*, 849

F.2d 464, 467–68 (10th Cir.1988)). Poindexter argues that, should her ADA claim be subject to arbitration, Santa Fe has waived its rights to compel arbitration. The plaintiff relies upon the fact that significant discovery has been conducted, that a trial date has been set, and that the defendant never sought to stay litigation to compel arbitration. In response, Santa Fe maintains it is not required to compel arbitration under the agreement.

collective bargaining agreement"); *see also Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 564, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987) ("The fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring an FELA action for damages."); *Felt v. Atchison, Topeka & Santa Fe Ry. Co.,* 60 F.3d 1416 (9th Cir.1995) (quoting *Prudential Ins. Co. v. Lai,* 42 F.3d 1299, 1305 (9th Cir.1994), *cert. denied,* — U.S. —, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995)) ("a Title VII plaintiff may be forced to forego her statutory remedies and arbitrate her claims only if 'she has knowingly agreed to submit such disputes to arbitration' ").

Although the Tenth Circuit Court of Appeals has not addressed whether the RLA preempts an ADA claim, the court has held that the RLA, "standing alone, cannot shield" a defendant from an ADEA claim. *Hiatt v. Union Pac. R.R. Co.,* 65 F.3d 838, 841 (10th Cir.1995) (relying upon *Buell,* 480 U.S. at 564–67, 107 S.Ct. at 1415–17 (RLA not preclude FELA claim)). The Eighth Circuit has rejected the RLA preemption argument in the ADA context, explaining that "a claim under the ADA ... seeks to enforce a federal statutory right, not a contractual right embodied by the collective bargaining agreement." *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1115 (8th Cir.1995). The court reasoned that "[t]he ADA 'provides a more extensive and broader ground for relief, specially oriented towards the elimination of discriminatory employment practices.' " *Id.* (quoting *Norman v. Missouri Pac. R.R.,* 414 F.2d 73, 83 (8th Cir.1969)). This court agrees and holds that the RLA does not preempt Poindexter's ADA claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant Santa Fe's motion for summary judgment (Doc. 17) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**