IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0882
════════════
 
Perry Homes, A Joint Venture, Home 
Owners Multiple Equity, Inc.,
and Warranty Underwriters 
Insurance Company, Petitioners,
 
v.
 
Robert E. Cull and S. Jane 
Cull, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second District of 
Texas
════════════════════════════════════════════════════
 
 
Argued March 20, 
2007
 
 
            
Justice Brister delivered the opinion of the Court, in 
which Justice Hecht, Justice O’Neill, 
Justice Wainwright, and Justice 
Medina joined, and in 
which Chief Justice Jefferson, Justice 
Green, Justice Johnson, and Justice Willett joined as to parts I–V.
 
            
Justice O’Neill filed a concurring opinion.
 
            
Justice Johnson filed an opinion concurring in part 
and dissenting in part, in which Chief 
Justice Jefferson and Justice 
Green joined.
 
            
Justice Willett filed an opinion concurring in part 
and dissenting in part.
 
            
Since 1846, Texas law has provided that parties to a 
dispute may choose to arbitrate rather than litigate.[1] But that choice cannot be abused; a party 
cannot substantially invoke the litigation process and then switch to 
arbitration on the eve of trial.[2] There is a strong presumption against 
waiver of arbitration,[3] but it is not irrebuttable and was 
plainly rebutted here. The Plaintiffs vigorously opposed (indeed spurned) 
arbitration in their pleadings and in open court; then they requested hundreds 
of items of merits-based information and conducted months of discovery under the 
rules of court; finally only four days before the trial setting they changed 
their minds and decided they would prefer to arbitrate after all. Having gotten 
what they wanted from the litigation process, they could not switch to 
arbitration at the last minute like this.
            
The Plaintiffs argue — and we agree — that sending them back to the trial 
court not only deprives them of a substantial award but also wastes the time and 
money spent in arbitration. But they knew of this risk when they requested 
arbitration at the last minute because all of the Defendants objected. 
Accordingly, we vacate the arbitration award and remand the case to the trial 
court for a prompt trial.
I. Background
            
In 1996, Robert and Jane Cull bought a house from Perry Homes for $233,730. They also bought a 
warranty from Home Owners Multiple Equity, Inc. and Warranty Underwriters 
Insurance Company. The warranty agreement included a broad arbitration clause 
providing that all disputes the Culls might have against Perry Homes or the 
warranty companies were subject to the Federal Arbitration Act, and would be 
submitted to the American Arbitration Association (AAA) or another arbitrator 
agreed upon by the parties.[4]
            
Over the next several years, the home suffered serious structural and 
drainage problems. According to the Culls, the Defendants spent more effort 
shifting blame than repairing the home. When the Culls sued in October 2000, the 
warranty companies (but not Perry Homes) immediately requested arbitration; 
the Culls vigorously opposed it, and no one ever pressed for a ruling. At the 
same time, the Culls’ attorneys began seeking extensive discovery from all of 
the Defendants.
            
After most of the discovery was completed and the case was set for trial, 
the Culls changed their minds about litigating. Instead they asked the trial 
court to compel arbitration under precisely the same clause and conditions to 
which they had originally objected. The trial judge expressed reservations, 
saying:
 
I really 
have a problem with people who have competent counsel who wait 14 months and 
after all this much effort in the courthouse has taken place, to come in and say 
that they have not waived that arbitration. That arbitration clause was there 
when the lawsuit was filed.
 
Nevertheless, 
the trial court ordered arbitration because the Defendants had not shown any 
prejudice from litigation conduct:
 
[A]ll I 
have heard from [defense counsel] insofar as what is the prejudice suffered by 
people you represent is that they have participated in litigation activities 
that may or may not have been required by the arbitrator. So without anything 
further, I am going to grant the motion to abate the case for arbitration.
 
The order was 
signed December 6, 2001, four days before the case was set for trial. The 
Defendants filed petitions for mandamus in the court of appeals and this Court, 
both of which were denied without opinion within a few days.[5]
            
After a year in arbitration, on December 24, 2002, the arbitrator awarded 
the Culls $800,000, including restitution of the purchase price of their home 
($242,759), mental anguish ($200,000), exemplary damages ($200,000), and 
attorney’s fees ($110,000). The Defendants moved to vacate the award, again 
arguing (among other things) that the case should never have been sent to 
arbitration after so much activity in court. The trial court overruled the 
objection, confirmed the award, and added post-judgment interest duplicating 
that already in the award; the court of appeals affirmed after deleting the 
duplicative interest.[6] We granted the Defendants’ petition to 
consider whether the arbitration award should be set aside because the Culls 
waived their right to arbitration.
II. When Should Orders Compelling Arbitration Be 
Reviewed?
            
At the outset, the Culls assert it is too late to review the trial 
court’s order referring this case to arbitration. First, they argue the 
pre-arbitration mandamus proceedings establish the law of the case and preclude 
the Defendants from raising the same arguments now. We recently rejected this 
argument, holding that as mandamus is a discretionary writ, “its denial, without 
comment on the merits, cannot deprive another appellate court from considering 
the matter in a subsequent appeal.”[7] Mandamus is only available when a final 
appeal would be inadequate;[8] if filing for mandamus precluded a final 
appeal, that requirement would be self-fulfilling. Because the earlier 
proceedings here were denied without comment on the merits, they do not 
foreclose our review.
            
Second, the Culls argue that an order compelling arbitration can only be 
reviewed before arbitration occurs. The Culls address none of the cases 
in which this Court and the United States Supreme Court have reviewed such 
orders after arbitration.[9] Nor do they address the general rule that 
parties waive nothing by foregoing interlocutory review and awaiting a final 
judgment to appeal.[10]
            
But most important, the Culls do not address section 16 of the Federal 
Arbitration Act, which expressly prohibits pre-arbitration appeals:
 
Except as 
otherwise provided in section 1292(b) of title 28 [providing for certified 
questions to federal circuit courts], an appeal may not be taken from an 
interlocutory order . . . directing arbitration to proceed under section 4 of 
this title [providing for orders compelling arbitration] . . . .[11]
 
This ban on 
interlocutory appeals of orders compelling arbitration was added by Congress in 
1988 to prevent arbitration from bogging down in preliminary appeals.[12] We have held that routine mandamus 
review of such orders in state court would frustrate this federal law.[13] 
            
The Culls assert that post-arbitration review is unavailable because an 
arbitration award can be vacated only for statutory grounds like corruption, 
fraud, or evident partiality.[14] But reviewing the trial court’s initial 
referral to arbitration is not the same as reviewing the arbitrator’s final 
award; as the United States Supreme Court has held, courts conduct ordinary 
review of the former and deferential review only of the latter.[15] 
            
We agree that post-arbitration review of referral may create (as the 
Culls allege) a “huge waste of the parties’ resources.” But if review is 
available before arbitration, parties may also waste resources appealing every 
referral when a quick arbitration might settle the matter. Frequent 
pre-arbitration review would inevitably frustrate Congress’s intent “to move the 
parties to an arbitrable dispute out of court and into arbitration as quickly 
and easily as possible.”[16] We recognize the potential for waste, 
but that is a risk a party must take if it moves for arbitration after 
substantially invoking the litigation process.
III. Do Courts or Arbitrators Decide Waiver?
            
The Culls also assert that waiver of arbitration by litigation conduct is 
an issue to be decided by arbitrators rather than courts. To the contrary, this 
Court and the federal courts have held it is a question of law for the court.[17] Rather than referring such claims to 
arbitrators, we have decided them ourselves at least eight times,[18] as does every federal circuit court.[19] 
            
The Culls argue this was all changed in 2002 by Howsam v. Dean Witter 
Reynolds, in which the United States Supreme Court said the “presumption is 
that the arbitrator should decide ‘allegation[s] of waiver, delay, or a like 
defense to arbitrability.’”[20] For several reasons, we disagree that 
this single sentence changed the federal arbitration landscape. 
            
First, “waiver” and “delay” are broad terms used in many different 
contexts. Howsam involved the National Association of Securities Dealers’ 
six-year limitations period for arbitration claims, not waiver by litigation 
conduct; indeed, it does not appear the United States Supreme Court has ever 
addressed the latter kind of waiver. Although the federal courts do not defer to 
arbitrators when waiver is a question of litigation conduct, they consistently 
do so when waiver concerns limitations periods or waiver of particular claims or 
defenses.[21] As Howsam involved the latter 
rather than the former,[22] its reference to waiver must be read in 
that context.
            
Second, the Howsam court specifically stated that “parties to an 
arbitration contract would normally expect a forum-based decisionmaker to decide 
forum-specific procedural gateway matters.”[23] Thus, the NASD’s six-year limitations 
rule in that case was a gateway matter for the NASD arbitrator because “the NASD 
arbitrators, comparatively more expert about the meaning of their own rule, are 
comparatively better able to interpret and to apply it.”[24] By contrast, when waiver turns on 
conduct in court, the court is obviously in a better position to decide whether 
it amounts to waiver.[25] “Contracting parties would expect the 
court to decide whether one party’s conduct before the court waived the right to 
arbitrate.”[26]
            
Third, as the Howsam Court itself stated, parties generally intend 
arbitrators to decide matters that “grow out of the dispute and bear on its 
final disposition,” while they intend courts to decide gateway matters regarding 
“whether the parties have submitted a particular dispute to arbitration.”[27] Waiver of a substantive claim or delay 
beyond a limitations deadline could affect final disposition, but waiver by 
litigation conduct affects only the gateway matter of where the case is tried.[28]
            
Finally, arbitrators generally must decide defenses that apply to the 
whole contract, while courts decide defenses relating solely to the arbitration 
clause.[29] Thus, for example, arbitrators must 
decide if an entire contract was fraudulently induced, while courts must decide 
if an arbitration clause was.[30] As waiver by litigation conduct goes 
solely to the arbitration clause rather than the whole contract, consistency 
suggests it is an issue for the courts.
            
Every federal circuit court that has addressed this issue since Howsam 
has continued to hold that substantial invocation of the litigation process 
is a question for the court rather than the arbitrator — including the First,[31] Third,[32] Fifth,[33] and Eighth Circuits.[34] Legal commentators appear to agree.[35] So do we.
IV. When Is the Litigation Process Substantially 
Invoked?
            
We have said on many occasions that a party waives an arbitration clause 
by substantially invoking the judicial process to the other party’s detriment or 
prejudice.[36] Due to the strong presumption against 
waiver of arbitration, this hurdle is a high one.[37] To date, we have never found such a 
waiver, holding in a series of cases that parties did not waive arbitration 
by:
$          
filing suit;[38]
 
$          
moving to dismiss a claim for lack of standing;[39]
 
$          
moving to set aside a default judgment and requesting a new trial;[40]
 
$          
opposing a trial setting and seeking to move the litigation to federal court;[41]
 
$          
moving to strike an intervention and opposing discovery;[42]
 
$          
sending 18 interrogatories and 19 requests for production;[43]
 
$          
requesting an initial round of discovery, noticing (but not taking) a single 
deposition, and agreeing to a trial resetting;[44] or 
 
$          
seeking initial discovery, taking four depositions, and moving for dismissal 
based on standing.[45]
 
            
These cases well illustrate the kind of conduct that falls short. But 
because none amounted to a waiver, they are less instructive about what conduct 
suffices. We have stated that “allowing a party to conduct full discovery, file 
motions going to the merits, and seek arbitration only on the eve of trial” 
would be sufficient.[46] But what if (as in this case) only two 
out of these three are met? And how much is “full discovery”?
            
We begin by looking to the standards imposed by the federal courts. They 
decide questions of waiver by applying a totality-of-the-circumstances test on a 
case-by-case basis.[47] In doing so, they consider a wide 
variety of factors including:
$          
whether the movant was plaintiff (who chose to file in court) or defendant (who 
merely responded);[48]
 
$          
how long the movant delayed before seeking arbitration;[49]
 
$          
whether the movant knew of the arbitration clause all along;[50]
 
$          
how much pretrial activity related to the merits rather than arbitrability or 
jurisdiction;[51]
 
$          
how much time and expense has been incurred in litigation;[52]
 
$          
whether the movant sought or opposed arbitration earlier in the case;[53]
 
$          
whether the movant filed affirmative claims or dispositive motions;[54]
 
$          
what discovery would be unavailable in arbitration;[55]
 
$          
whether activity in court would be duplicated in arbitration;[56] and
 
$          
when the case was to be tried.[57]
 
Of course, all 
these factors are rarely presented in a single case. Federal courts have found 
waiver based on a few, or even a single one.[58]
            
We agree waiver must be decided on a case-by-case basis, and that courts 
should look to the totality of the circumstances. Like the federal courts, this 
Court has considered factors such as:
$          
when the movant knew of the arbitration clause;[59]
 
$          
how much discovery has been conducted;[60] 
 
$          
who initiated it;[61] 
 
$          
whether it related to the merits rather than arbitrability or standing;[62]
 
$          
how much of it would be useful in arbitration;[63] and
 
$          
whether the movant sought judgment on the merits.[64] 
 
            
Thus, we disagree with the court of appeals that waiver is ruled out in 
this case solely because the Culls “did not ask the court to make any judicial 
decisions on the merits of their case.”[65] While this is surely a factor,[66] it is not the only one. Waiver involves 
substantial invocation of the judicial process, not just judgment on the 
merits.
            
We also disagree with the Defendants that different standards should 
apply to plaintiffs and defendants. As parties may begin arbitration without a 
court order, it is certainly relevant that a plaintiff chose to file suit 
instead. But Texas procedure also contemplates that parties 
may file suit in order to compel arbitration.[67] Thus, while the movant’s status is a 
factor to consider, it does not alone justify a finding of waiver or change the 
basic nature of the totality-of-the-circumstances test.[68]
            
We recognize, as we have noted before, “the difficulty of uniformly 
applying a test based on nothing more than the totality of the circumstances.”[69] But there appears to be no better test 
for “substantial invocation.”[70] As the United States Supreme Court has 
said about minimum contacts, tests based on “reasonableness” are never 
susceptible to mechanical application — “few answers will be written in black 
and white[;] [t]he greys are dominant and even among them the shades are 
innumerable.”[71] How much litigation conduct will be 
“substantial” depends very much on the context; three or four depositions may be 
all the discovery needed in one case,[72] but purely preliminary in another.[73] 
            
Moreover, this test is quite similar to one we have long recognized and 
recently applied to arbitration — estoppel. Estoppel is a defensive theory 
barring parties from asserting a claim or defense when their representations 
have induced “action or forbearance of a definite and substantial character” and 
“injustice can be avoided only by enforcement.”[74] In arbitration cases, we have held a 
nonparty who enjoys substantial direct benefits from a contract may be estopped 
from denying an arbitration clause in the same contract.[75] By the same token, a party who enjoys 
substantial direct benefits by gaining an advantage in the pretrial litigation 
process should be barred from turning around and seeking arbitration with the 
spoils.
            
The answer to most questions regarding arbitration “flow inexorably from 
the fact that arbitration is simply a matter of contract between the parties.”[76] Like any other contract right, 
arbitration can be waived if the parties agree instead to resolve a dispute in 
court. Such waiver can be implied from a party’s conduct, although that conduct 
must be unequivocal.[77] And in close cases, the “strong 
presumption against waiver” should govern.[78]
V. Is a Showing of Prejudice Required?
            
Although convinced that the Culls had substantially invoked the 
litigation process, the trial court compelled arbitration because the Defendants 
did not prove an arbitrator would not have allowed the same discovery. “Even 
substantially invoking the judicial process does not waive a party’s arbitration 
rights unless the opposing party proves that it suffered prejudice as a 
result.”[79] On at least eight occasions, we have 
said prejudice is a necessary requirement of waiver by litigation conduct.[80]
            
The Defendants ask us to reconsider this requirement. They point out that 
Texas law does not require a showing of prejudice for waiver, but only an 
intentional relinquishment of a known right.[81] Waiver “is essentially unilateral in its 
character” and “no act of the party in whose favor it is made is necessary to 
complete it.”[82] Thus, they argue we cannot impose a 
waiver rule for arbitration contracts that does not apply to all others.[83]
            
We decline the Defendants’ invitation based on both federal and state 
law. The Defendants say the federal courts are split on the issue, but the split 
is not very wide. Of the twelve regional circuit courts, ten require a showing 
of prejudice,[84] and the other two treat it as a factor 
to consider.[85] We have noted before the importance of 
keeping federal and state arbitration law consistent.[86] 
            
Under Texas law, waiver may not include a prejudice 
requirement, but estoppel does. In cases of waiver by litigation conduct, the 
precise question is not so much when waiver occurs as when a party can no longer 
take it back. As noted above, Texas estoppel law does not allow a party to 
withdraw a representation once the other party takes “action or forbearance of a 
definite and substantial character.”[87] Using precisely the same terms, the 
Restatement does not allow a party to withdraw an option contract when the 
offeree has taken substantial action based upon it.[88] In these contexts, prejudice is an 
element of the normal contract rules. 
            
Thus, we agree with the courts below that waiver of arbitration requires 
a showing of prejudice. 
VI. Was Arbitration Waived Here?
A. Did the Culls Waive Arbitration?
            
It remains only to apply these rules to this case. 
            
Unquestionably, the Culls substantially invoked the litigation process, 
as their conduct here far exceeds anything we have reviewed before. Before 
arbitration was ordered, the Culls did not deny taking ten depositions, and the 
court’s file (of which the trial judge took judicial notice) included:
 
$          
their initial objection to arbitration covering 79 pages;
 
$          
the Defendants’ responses to requests for disclosure;
                                                                                                            

$          
the Culls’ five motions to compel, attached to which were 76 requests for 
production of documents regarding complaints, inspections, repairs, and 
settlements relating to eight other homes in the same subdivision;
 
$          
Perry Homes’ two motions for protective orders regarding six designees noticed 
for deposition by the Culls on nine issues (including purchase and preparation 
of the lot, design and construction of the foundation, sale of this home and 
others in the subdivision, and attempts to deal with the Culls’ and other 
foundation complaints), with an attachment requesting 67 categories of documents 
(including all photos, videos, correspondence, insurance policies, plans, soil 
tests, permits, subcontractors, contracts for sale, and repairs relating to the 
house or the suit, all complaints about any house in the subdivision, and Perry 
Homes’ articles of incorporation, by-laws, minutes, and financials); and
 
$          
the Culls’ notices of depositions for three of the Defendants’ experts with 24 
categories of documents requested from each (including all documents relating to 
this case, all their articles, publications, or speeches given in their fields 
of expertise, all courses or seminars they had attended, all persons they had 
studied under, and all reference books or treatises in their libraries).
 
There is 
simply no question on this record that the Culls conducted extensive discovery 
about every aspect of the merits.[89]
            
But under the totality-of-the-circumstances test, discovery is not the 
only measure of waiver. Here, when the warranty defendants initially moved to 
compel arbitration, the Culls filed a 79-page response opposing it, asserting 
that the AAA “is incompetent, is biased, and fails to provide fair and 
appropriate arbitration panels.” They complained of the AAA’s fees, and asserted 
that as a result the “purported arbitration clause is unconscionable and 
unenforceable, and this Court’s enforcement of such would be nothing short of 
ridiculous and absurd.” This, plus their prayer asking the trial court to deny 
the motion to compel arbitration “in its entirety,” belies the court of appeals’ 
conclusion that “the Culls merely opposed the use of the AAA” rather than 
arbitration itself.[90] In some federal courts, the Culls’ 
objection alone could suffice to waive arbitration.[91] 
            
The Culls also moved for arbitration very late in the trial process. It 
is true that Perry 
Homes moved to continue the 
trial setting when the Culls sought arbitration, requesting about ten weeks to 
finish deposing experts. Because the trial court ordered arbitration, no one 
knows whether the case would have gone to trial (including the unnamed court 
clerk cited by the dissent). But in view of the written discovery and 
depositions already completed, the record is nevertheless clear that most of the 
discovery in the case had already been completed before the Culls requested 
arbitration. The rule that one cannot wait until “the eve of trial” to request 
arbitration is not limited to the evening before trial; it is a rule of 
proportion that is implicated here.[92]
            
Then 14 months after filing suit and shortly before the December 2001 
trial setting, the Culls changed their minds and requested arbitration. They 
justified their change of heart on the basis that they wanted to avoid the 
delays of an appeal. But their change unquestionably delayed adjudication of the 
merits; instead of a trial beginning in a few days or weeks, the plenary 
arbitration hearing did not begin until late September of 2002 — almost ten 
months after the Culls abandoned their trial setting. Moreover, to the extent 
arbitration reduces delay, it does so by severely limiting both pretrial 
discovery and post-trial review. Having enjoyed the benefits of extensive 
discovery for 14 months, the Culls could not decide only then that they were in 
a hurry.
            
It is also unquestionably true that this conduct prejudiced the 
Defendants. “Prejudice” has many meanings, but in the context of waiver under 
the FAA it relates to inherent unfairness — that is, a party’s attempt to have 
it both ways by switching between litigation and arbitration to its own 
advantage:
 
[F]or 
purposes of a waiver of an arbitration agreement[,] prejudice refers to the 
inherent unfairness in terms of delay, expense, or damage to a party’s legal 
position that occurs when the party’s opponent forces it to litigate an issue 
and later seeks to arbitrate that same issue.[93]
 
Thus, “a party 
should not be allowed purposefully and unjustifiably to manipulate the exercise 
of its arbitral rights simply to gain an unfair tactical advantage over the 
opposing party.”[94]
            
Here, the record before the trial court showed that the Culls objected to 
arbitration initially, and then insisted on it after the Defendants acquiesced 
in litigation. They got extensive discovery under one set of rules and then 
sought to arbitrate the case under another. They delayed disposition by 
switching to arbitration when trial was imminent and arbitration was not. They 
got the court to order discovery for them and then limited their opponents’ 
rights to appellate review. Such manipulation of litigation for one party’s 
advantage and another’s detriment is precisely the kind of inherent unfairness 
that constitutes prejudice under federal and state law.
B. A Response to the Dissents
            
Although we have repeatedly said arbitration agreements can be waived, 
today’s dissents would effectively hold they cannot. That would favor 
arbitration too much; because most agreements can be waived by the parties’ 
conduct,[95] arbitration contracts should not be 
more enforceable than other contracts. That is not what Congress intended 
when it enacted the FAA.[96] Indeed, one dissent cannot even bring 
itself to say the Culls substantially invoked the litigation process. If the 
litigation conduct here is not enough, it is hard to imagine what would be. 
            
The dissents make several mistakes in their analyses. First, they 
misconstrue the standard of review. Every abuse-of-discretion review is not 
identical because “a trial judge’s discretion may be applied to scores of 
situations and in many different ways.”[97] Reviewing a declaratory judgment fee 
award (where trial judges have broad discretion)[98] is not the same as reviewing admission 
of hearsay (where trial judges follow detailed rules),[99] even though an abuse-of-discretion 
standard applies to both.[100] Moreover, a 
totality-of-the-circumstances test presumes a multitude of potential factors and 
a balancing of evidence on either side; if appellate courts must affirm every 
time there is some factor that was not negated or some evidence on either side, 
then no ruling based on the totality-of-the-circumstances could ever be 
reversed. That standard of review would be the same as no review at all. By 
applying such a standard, both dissents would allow trial judges to send any 
case to arbitration no matter what has occurred in court.
            
Under a proper abuse-of-discretion review, waiver is a question of law 
for the court,[101] and we do not defer to the trial court 
on questions of law.[102] We do defer to a trial court’s factual 
findings if they are supported by evidence,[103] but there was no factual dispute here 
regarding whether the Culls initially opposed arbitration, whether they 
conducted extensive merits discovery, or whether they sought arbitration late in 
the litigation process. This leaves only the conclusion whether such conduct 
constitutes prejudice, a legal question we cannot simply abandon to the trial 
court.[104]
            
Second, the dissents define prejudice in a way that makes it impossible 
to prove. While recognizing that “waiver” has a special definition in the 
arbitration context, the dissents overlook that “prejudice” does too. Instead of 
the inherent-unfairness standard used by the federal courts,[105] they impose what appears to be an 
irretrievable-loss standard. One dissent would go so far as to hold that no 
amount of discovery, no matter how extensive, can show prejudice if the fees 
incurred might be compensated in the final arbitration award, even if 
erroneously.[106] No one could ever show prejudice under 
this standard, because even if a contract allowed no reimbursement of discovery 
costs (as in this case),[107] it is always hypothetically possible 
that a rogue arbitrator might reimburse costs regardless. The same dissent would 
find no prejudice from extensive discovery without proof that an arbitrator 
would have prohibited it. That again is impossible; arbitrators have almost 
unbridled discretion regarding discovery, so no one can predict what they might 
do in advance. Presuming (as the dissents do) that broad discovery is generally 
available in arbitration simply ignores one of its most distinctive features.[108] 
            
Third, both dissents quibble with the Defendants’ proof of prejudice 
because it was insufficiently detailed.[109] This confuses proof of the fact 
of prejudice with proof of its extent; the Defendants had to show 
substantial invocation that prejudiced them, not precisely how much it all was. 
Referral to arbitration should be decided summarily with the evidence limited to 
disputed facts;[110] as the Culls did not dispute that the 
parties had conducted more than a dozen depositions and other extensive 
discovery on the merits, requiring proof of each one would have merely made the 
referral hearing longer and more expensive. The pre-arbitration record proved 
that discovery was extensive; the evidence demanded by the dissents would have 
merely showed how much it cost.
            
Finally, the dissents’ focus on discovery ignores all the other 
circumstances that the totality-of-the-circumstances test requires us to 
consider. Because we must consider all the circumstances, the amount of 
discovery needed to show prejudice will vary depending on what the other 
circumstances are. As the Fifth Circuit has held, prejudice should be easier to 
show against a party that initially opposed arbitration than against one who 
sought it from the start:
 
While the 
mere failure to assert the right to demand arbitration does not alone translate 
into a waiver of that right, such failure does bear on the question of 
prejudice, and may, along with other considerations, require a court to conclude 
that waiver has occurred. The failure to demand arbitration affects the burden 
placed upon the party opposing waiver. When a timely demand for arbitration was 
made, the burden of proving waiver falls even more heavily on the shoulders of 
the party seeking to prove waiver. A demand for arbitration puts a party on 
notice that arbitration may be forthcoming, and therefore, affords that party 
the opportunity to avoid compromising its position with respect to arbitrable 
and nonarbitrable claims. In contrast, where a party fails to demand arbitration 
. . . and in the meantime engages in pretrial activity inconsistent with an 
intent to arbitrate, the party later opposing a motion to compel arbitration may 
more easily show that its position has been compromised, i.e., prejudiced.[111]
 
            
It is these other circumstances that make this case different from In 
re Vesta.[112] The parties seeking arbitration in 
Vesta had not opposed arbitration from the outset and then invoked it 
after getting all the discovery they wanted.[113] Nor was the Vesta case close to 
trial, as was the case here. The parties in Vesta had taken four 
depositions (rather than 15); they had also exchanged standard requests for 
disclosure and one request for production, but only one of those documents was 
in the record so there was no evidence whether this limited discovery related to 
the merits (as the extensive discovery here clearly did).[114] And while the party opposing 
arbitration in Vesta allegedly incurred more than $200,000 in expenses, 
most of that was incurred in getting discovery rather than providing 
it;[115] a party who requests lots of 
discovery is not prejudiced by getting it and taking it to arbitration in the 
same way that a party who produces lots of discovery outside the stricter 
discovery limits in arbitration.[116]
            
Applying the proper standard of review and the proper definition of 
prejudice, we disagree with the dissents that the Defendants have failed to show 
prejudice here.
C. Did the Warranty Companies Waive Arbitration?
            
Finally, the Culls argue the warranty companies cannot object to 
arbitration for two reasons.
            
First, the warranty companies originally requested arbitration (which the 
Culls opposed), so it could be argued that it is unfair to hold the Culls to 
their original position without holding the warranty companies to theirs. Of 
course, we cannot hold both parties to their original positions as those 
positions were contradictory. More important, while the parties’ original 
demands are relevant factors, the test is the totality of the circumstances. 
Looking to all the circumstances, it is quite clear from the parties’ extensive 
co-participation in months of discovery that everyone waived their right to 
arbitration — whether they asserted that right early (as did the warranty 
companies) or late (as did the Culls). 
            
Second, the Culls argue that the only objection to the trial court’s 
order compelling arbitration was filed by Perry Homes, not the warranty companies. It is 
true that only Perry Homes’ attorneys signed the motion, but in that motion and 
at the hearing held on it they represented that they were authorized to do so on 
behalf of all the Defendants. If the Culls wanted to question their authority to 
speak for the warranty companies, they should have done so by sworn motion.[117] 
* 
* *
            
Accordingly, we reverse the court of appeals’ judgment, vacate the 
arbitration award, and remand this case to the trial court for a prompt 
trial.
 
 
            
______________________________
            
Scott Brister
            
Justice
 
OPINION 
DELIVERED: May 2, 2008
 
 







[1] 
See L. H. Lacy Co. v. City of Lubbock, 559 
S.W.2d 348, 351 (Tex. 1977).

[2] 
See Republic Ins. Co. v. PAICO Receivables, LLC, 383 F.3d 341, 348 (5th 
Cir. 2004); Com-Tech Assocs. v. Computer Assocs. Int’l, Inc., 938 F.2d 
1574, 1576-77 (2d Cir. 1991); Price v. Drexel Burnham Lambert, Inc., 791 
F.2d 1156, 1160 (5th Cir. 1986); In re Vesta Ins. Group, Inc., 192 S.W.3d 
759, 764 (Tex. 2006).

[3] 
See, e.g., In re Vesta, 192 S.W.3d at 763; In re Bruce Terminix 
Co., 988 S.W.2d 702, 704–05 (Tex. 1998); 
EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89–90 (Tex. 1996).

[4] 
The warranty provided:
 
Any “unresolved dispute” (defined below) that you may 
have with [Perry Homes or the warranty companies] shall be submitted to binding 
arbitration governed by the procedures of the Federal Arbitration Act, 9 U.S.C. 
1 et seq. . . . The dispute will be submitted to the American Arbitration 
Association, or such other independent arbitration service as is agreeable to 
the [warranty administrator] and you . . . .

[5] 
Perry 
Homes sought mandamus in 
the court of appeals on April 11, 2002, and was denied 7 days later. It refiled 
in this Court on April 26, and was denied 13 days later.

[6] 
173 S.W.3d 565, 568. 

[7] 
Chambers v. O’Quinn, 242 S.W.3d 30, 32 (Tex. 2007).

[8] 
In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135–36 (Tex. 2004); Walker v. Packer, 827 S.W.2d 833, 840 
(Tex. 
1992).

[9] 
See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 89 (2000); Chambers, 242 S.W.3d 
at 31; see also Gulf Oil Corp. v. Guidry, 327 S.W.2d 406, 408 (Tex. 1959) (invalidating portion of award regarding 
nonarbitrable issues); Fortune v. Killebrew, 23 S.W. 976, 978 (Tex. 1893) 
(same).

[10] Pope v. Stephenson, 787 S.W.2d 953, 
954 (Tex. 1990) (“The decision not to pursue the extraordinary remedy of 
mandamus does not prejudice or waive a party’s right to complain on appeal.”); 
accord, City of San Benito v. Rio Grande Valley Gas Co., 109 S.W.3d 750, 
756 (Tex. 2003); Walker v. Packer, 827 S.W.2d 833, 842 n.9 (Tex. 
1992).

[11] See 9 U.S.C. § 16(b)(2); see also 
Tex. Civ. Prac. & Rem. Code 
§ 171.098 (providing for interlocutory appeal only of orders denying 
motion to compel arbitration).

[12] See David D. Siegel, Appeals from 
Arbitrability Determinations, Practice Commentary to 9 U.S.C. § 16 (“The 
mission of § 16 is to assure that if the district court does determine that 
arbitration is called for, the court system’s interference with the arbitral 
process will terminate then and there, leaving the arbitration free to go 
forward. To accomplish this, § 16 provides in general that there may be no 
appeal from the pro-arbitration determination until after the arbitration has 
gone forward to a final award.”); see also Charles Alan Wright, Arthur R. Miller & 
Edward H. Cooper, Federal 
Practice and Procedure § 3914.17 (2d ed. 1992).

[13] In re Palacios, 221 S.W.3d 564, 565 
(Tex. 2006). 
Courts may review an order compelling arbitration if the order also dismisses 
the underlying litigation so it is final rather than interlocutory. See Green 
Tree Fin. Corp.-Ala., 531 U.S. at 87 n.2; Childers v. 
Advanced Found. Repair, L.P., 193 S.W.3d 897, 898 (Tex. 2006). As we noted 
in Palacios, the Fifth Circuit has indicated it may review a district 
court’s decision to stay rather than dismiss if a petitioner shows “clearly and 
indisputably that the district court did not have the discretion to stay the 
proceedings pending arbitration.” Id. 
(citing Apache Bohai Corp., LDC v. Texaco China, B.V., 
330 F.3d 307, 310-11 (5th Cir. 2003)).

[14] See 9 U.S.C. § 10(a). 

[15] First Options of Chi., Inc. v. 
Kaplan, 514 U.S. 938, 947–48 (1995). The Court 
noted that a different rule would apply if the parties clearly and unmistakably 
indicated in the arbitration contract that the arbitrator should decide 
arbitrability, id., but there is no such indication in this 
contract.

[16] Preston v. Ferrer, ___ U.S. ___, ___ (2008) (quoting Moses H. Cone 
Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 
(1983)).

[17] In re Serv. Corp. Int’l, 85 S.W.3d 
171, 174 (Tex. 2002); In re Bruce Terminix Co., 988 S.W.2d 702, 703–04 
(Tex. 1998); accord, In re Citigroup, Inc., 376 F.3d 23, 26 (1st 
Cir. 2004); Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 
104 (2d Cir. 2002); Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 
1316 n.18 (11th Cir. 2002); Price v. Drexel Burnham Lambert, Inc., 791 
F.2d 1156, 1159 (5th Cir. 1986).

[18] See In re Bank One, N.A., 216 S.W.3d 
825, 827 (Tex. 2007) (finding no waiver under FAA); In re D. Wilson Constr. 
Co., 196 S.W.3d 774, 783 (Tex. 2006) (same); In re Vesta Ins. Group, 
Inc., 192 S.W.3d 759, 764 (Tex. 2006) (same); In re Serv. Corp. 
Int’l, 85 S.W.3d at 174 (same); In re Bruce Terminix Co., 988 S.W.2d 
at 704–05 (same); In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 574 
(Tex. 1999) (same); EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89–90 (Tex. 
1996) (same); Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 
1995). 

[19] See, e.g., Creative Solutions 
Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32–34 (1st Cir. 2001); 
Doctor’s Assocs., Inc. v. Distajo, 66 F.3d 438, 456 (2d Cir. 1995); Wood 
v. Prudential Ins. Co. of Am., 207 F.3d 674, 680 (3d Cir. 2000); Am. 
Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 96 (4th 
Cir. 1996); Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 329 (5th 
Cir. 1999); Germany v. River Terminal Ry. Co., 477 F.2d 546, 547 (6th 
Cir. 1973); Ernst & Young LLP v. Baker O’Neal Holdings, Inc., 304 
F.3d 753, 758 (7th Cir. 2002); Ritzel Commc’ns v. Mid-American Cellular, 
989 F.2d 966, 969–71 (8th Cir. 1993); Martin Marietta Aluminum, Inc. v. Gen. 
Elec. Co., 586 F.2d 143, 146 (9th Cir. 1978); Metz v. Merrill Lynch, 
Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489–90 (10th Cir. 1994); 
Ivax Corp., 286 F.3d at 1316; Nat’l Found. for Cancer Research v. A.G. 
Edwards & Sons, Inc., 821 F.2d 772, 777–78 (D.C. Cir. 1987).

[20] 537 U.S. 79, 84 (2002) (quoting Moses H. Cone 
Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 
(1983)).

[21] See, e.g., Green Tree Fin. Corp. 
v. Bazzle, 539 U.S. 444, 447 (2003) (holding whether arbitration could 
proceed by class action was question for arbitrator); John Wiley & Sons, 
Inc. v. Livingston, 376 U.S. 543, 557 (1964) (holding question whether steps 
of grievance procedure prerequisite to arbitration had been completed was for 
arbitrator); Sleeper Farms v. Agway, Inc., 506 F.3d 98, 104 (1st Cir. 
2007) (noting question whether breach of contract voided arbitration clause 
would normally be for arbitrator); United Steelworkers of Am. v. Saint Gobain 
Ceramics & Plastics, Inc., 505 F.3d 417, 422 (6th Cir. 2007) (holding 
question of timely demand for arbitration was for arbitrator); Ansari v. 
Qwest Commc’ns Corp., 414 F.3d 1214, 1220–21 (10th Cir. 2005) (holding 
question whether plaintiffs waived forum selection clause by filing suit 
elsewhere was for arbitrator); Pro Tech Indus., Inc. v. URS Corp., 377 
F.3d 868, 871–72 (8th Cir. 2004) (holding questions of timely demand and waiver 
by failing to initiate arbitration were for arbitrator); Glass v. Kidder 
Peabody & Co., 114 F.3d 446, 457 (4th Cir. 1997) (holding question of 
timely demand for arbitration was for arbitrator); Great W. Mortgage Corp. v. 
Peacock, 110 F.3d 222, 231–32 (3d Cir. 1997) (holding question of waiver of 
substantive state law rights was for arbitrator).

[22] See Howsam, 537 U.S. at 
81–82.

[23] Id. at 86.

[24] Id. at 85.

[25] Tristar Fin. Ins. Agency, Inc. v. 
Equicredit Corp. of Am., 97 F. App’x 462, 464 (5th Cir. 2004).

[26] Id.

[27] Howsam, 537 U.S. at 83–84 (internal quotations omitted); 
see also Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451–52 
(2003).

[28] See Marie v. Allied Home Mortgage 
Corp., 402 F.3d 1, 13 (1st Cir. 2005).

[29] Buckeye 
Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 
(2006) (“We reaffirm today that . . . a challenge to the validity of the 
contract as a whole, and not specifically to the arbitration clause, must go to 
the arbitrator.”).

[30] In re 
Merrill Lynch Trust Co. FSB, 235 S.W.3d 185, 190 (Tex. 2007) (holding claim that contract was illusory went 
to contract as a whole and thus was for arbitrators); In re FirstMerit Bank, 
N.A., 52 S.W.3d 749, 756 (Tex. 2001) (“The de los Santoses assert the 
defenses of unconscionability, duress, fraudulent inducement, and revocation. We 
again note that these defenses must specifically relate to the Arbitration 
Addendum itself, not the contract as a whole, if they are to defeat 
arbitration.”); see also In re Kaplan Higher Educ. Corp., 235 S.W.3d 206, 
210 (Tex. 2007) (holding claim of “unclean hands” that went to contract as a 
whole rather than arbitration clause was question for 
arbitrators).

[31] In Re Tyco 
Int’l Ltd. Sec. Litig., 422 F.3d 41, 45–47 (1st Cir. 2005); Marie, 
402 F.3d at 13–14; In re Citigroup, Inc., 376 F.3d 23, 27–29 (1st Cir. 
2004); Rankin v. Allstate Ins. Co., 336 F.3d 8, 12-14 (1st Cir. 2003); 
Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 61–63 
(1st Cir. 2003).

[32] Ehleiter 
v. Grapetree Shores, Inc., 482 F.3d 207, 217–21 (3d Cir. 
2007).

[33] Republic 
Ins. Co. v. PAICO Receivables, LLC, 383 F.3d 341, 344–47 (5th Cir. 2004); 
Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 F. App’x 
462, 464 (5th Cir. 2004).

[34] Lewallen 
v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090–94 (8th Cir. 2007); 
Kelly v. Golden, 352 F.3d 344, 349–50 (8th Cir. 2003). The Eighth Circuit 
did refer to Howsam in one case as requiring waiver to be referred to 
arbitrators, but that case involved an allegation of waiver by previous 
arbitration, not litigation. See Nat’l Am. Ins. Co. v. Transamerica 
Occidental Life Ins. Co., 328 F.3d 462, 463–66 (8th Cir. 
2003).

[35] See 
David LeFevre, Note, Whose Finding is it Anyway?: The Division of Labor 
Between Courts and Arbitrators with Respect to Waiver, 2006 J. Disp. Resol. 305, 316–17 (2006); 
Stephen K. Huber, The Arbitration Jurisprudence of the Fifth Circuit, Round 
II, 37 Tex. Tech L. Rev. 531, 
542 (2005).

[36] In re Bank 
One, N.A., 216 S.W.3d 825, 827 (Tex. 2007); In re D. Wilson Constr. 
Co., 196 S.W.3d 774, 783 (Tex. 2006); In re Vesta Ins. Group, Inc., 
192 S.W.3d 759, 763 (Tex. 2006); In re Serv. Corp. Int’l, 85 S.W.3d 171, 
174 (Tex. 2002); In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 574 
(Tex. 1999); In re Bruce Terminix Co., 988 S.W.2d 702, 704 (Tex. 1998); 
EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 89 (Tex. 1996); Prudential 
Sec. Inc. v. Marshall, 909 S.W.2d 896, 898–99 (Tex. 1995).

[37] In re Bank 
One, N.A., 216 S.W.3d at 827; In re D. Wilson Constr. Co., 196 S.W.3d 
at 783; In re Vesta Ins. Group, Inc., 192 S.W.3d at 763; In re Serv. 
Corp. Int’l, 85 S.W.3d at 174; In re Bruce Terminix Co., 988 S.W.2d 
at 704; EZ Pawn Corp., 934 S.W.2d at 89.

[38] In re D. 
Wilson Constr. Co., 196 S.W.3d at 783.

[39] In re 
Vesta Ins. Group, Inc., 192 S.W.3d at 764.

[40] In re Bank 
One, N.A., 216 S.W.3d at 827. 

[41] In re 
Serv. Corp. Int’l, 85 S.W.3d at 174–75. 

[42] Prudential 
Sec. Inc. v. Marshall, 909 S.W.2d 896, 898–99 
(Tex. 
1995).

[43] In re 
Bruce Terminix Co., 988 S.W.2d at 704.

[44] EZ Pawn 
Corp. v. Mancias, 934 S.W.2d 87, 90 (Tex. 1996).

[45] In re 
Vesta Ins. Group, Inc., 192 S.W.3d at 763 (holding requests for disclosure, 
four depositions, and request for production did not waive arbitration absent 
proof regarding extent of requests and whether they addressed merits or 
arbitrability).

[46] Id. at 
764.

[47] In re Tyco 
Int’l Ltd. Sec. Litig., 422 F.3d 41, 46 (1st Cir. 2005) (“[E]ach case is to 
be judged on its particular facts.”); Republic Ins. Co. v. PAICO Receivables, 
LLC, 383 F.3d 341, 346 (5th Cir. 2004) (“Ultimately, however, the question 
of what constitutes a waiver of the right of arbitration depends on the facts of 
each case.”); accord, Ivax Corp. v. B. Braun of Am., Inc., 286 
F.3d 1309, 1315 (11th Cir. 2002); Grumhaus v. Comerica Sec., Inc., 223 
F.3d 648, 650 (7th Cir. 2000); Nat’l Found. for Cancer Research v. A.G. 
Edwards & Sons, Inc., 821 F.2d 772, 774 (D.C. Cir. 1987); Tenneco 
Resins, Inc. v. Davy Int’l, AG, 770 F.2d 416, 420 (5th Cir. 
1985).

[48] 
Grumhaus, 223 F.3d at 650; see also Cabinetree of Wis., Inc. v. 
Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 
1995).

[49] PAICO, 
383 F.3d at 346; In re Citigroup, Inc., 376 F.3d 23, 26 (1st Cir. 
2004); Metz 
v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489 (10th 
Cir. 1994); Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 926 
(3d Cir. 1992).

[50] Brown v. 
Dillard’s, Inc., 430 F.3d 1004, 1012 (9th Cir. 2005); Patten Grading 
& Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 206 (4th Cir. 
2004).

[51] 
PAICO, 383 F.3d at 346; Kelly v. Golden, 352 F.3d 344, 349 
(8th Cir. 2003); Hoxworth, 980 F.2d at 926; Gilmore v. 
Shearson/American Express Inc., 811 F.2d 108, 112 (2d Cir. 1987); Sedco, 
Inc. v. Petroleos Mexicanos Mexican Nat’l Oil Co., 767 F.2d 1140, 1150–51 
(5th Cir. 1985).

[52] 
PAICO, 383 F.3d at 346; Patten Grading, 380 F.3d at 205; 
In re Citigroup, 376 F.3d at 26; Metz, 39 F.3d at 1489; Hoxworth, 
980 F.2d at 927.

[53] 
Hoxworth, 980 F.2d at 927; Com-Tech Assocs. v. Computer Assocs. Int’l, 
Inc., 938 F.2d 1574, 1577 (2d Cir. 1991); E.C. Ernst, Inc. v. Manhattan 
Constr. Co., 551 F.2d 1026, 1040–41 (5th Cir. 1977); Blake Constr. Co. v. 
U.S. for Use and Benefit of Lichter, 252 F.2d 658, 662 (5th Cir. 
1958).

[54] In re 
Citigroup, 376 F.3d at 26; Metz, 39 F.3d at 1489.

[55] In re 
Citigroup, 376 F.3d at 26; Kelly, 352 F.3d at 349; Metz, 39 F.3d at 
1489.

[56] Kelly, 
352 F.3d at 349; Metz, 39 F.3d at 1489.

[57] Leadertex, 
Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 
1995); Peterson v. Shearson/American Express, Inc., 849 F.2d 464, 468 
(10th Cir. 1988) (finding waiver as movant waited until five weeks before trial 
date to move to compel).

[58] See, 
e.g., Restoration Preserv. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 
54, 62 (1st Cir. 2003) (finding three-year delay alone sufficient to establish 
waiver); Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 
388, 391 (7th Cir. 1995) (finding removal to federal court alone sufficient to 
establish waiver).

[59] See EZ 
Pawn Corp. v. Mancias, 934 S.W.2d 87, 88–89 (Tex. 1996) (finding no waiver as defendant did 
not discover existence of arbitration agreement for almost a 
year).

[60] In re 
Vesta Ins. Group, Inc., 192 S.W.3d 759, 763 (Tex. 2006).

[61] 
Id.

[62] 
Id.

[63] Id.; 
In re Bruce Terminix Co., 988 S.W.2d 702, 704 (Tex. 
1998).

[64] In re 
Bruce Terminix Co., 988 S.W.2d at 704. 

[65] 173 S.W.3d at 
570.

[66] See In re 
Bruce Terminix Co., 988 S.W.2d at 704. 

[67] See, 
e.g., Tex. Civ. Prac. & Rem. 
Code § 171.021(a) (“A court shall order the parties to arbitrate on 
application of a party showing: (1) an agreement to arbitrate; and (2) the 
opposing party’s refusal to arbitrate.”).

[68] In re D. 
Wilson Constr. Co., 196 S.W.3d 774, 783 (Tex. 2006); accord, 
United Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756, 764 (9th Cir. 
2002).

[69] See R.R. 
St. & Co. v. Pilgrim Enters., Inc., 166 S.W.3d 232, 242–43 (Tex. 2005) (quotation 
marks omitted) (applying totality-of-the-circumstances test in determining 
whether party “otherwise arranged” to dispose of hazardous 
waste).

[70] See 
Burton-Dixie Corp. v. Timothy McCarthy Constr. Co., 436 F.2d 405, 407–08 
(5th Cir. 1971) (“There is no set rule, however, as to what constitutes a waiver 
or abandonment of the arbitration agreement. The question depends upon the facts 
of each case and usually must be determined by the trier of facts.”); Joel E. 
Smith, Annotation, Defendant’s Participation in Action as Waiver of Right to 
Arbitration of Dispute Involved Therein, 98 A.L.R. 3d 767, 771 (1980) (“In 
those cases involving the issue of whether the defendant’s participation in an 
action constitutes a waiver of the right to arbitrate the dispute involved 
therein, no general rules are readily apparent for determining waiver other than 
the general adherence by the courts to the principle that waiver is to be 
determined from the particular facts and circumstances of each case . . . 
.”).

[71] Kulko v. 
Superior Court of Cal., 436 
U.S. 84, 92 (1978) (quoting 
Estin v. Estin, 334 U.S. 541, 545 
(1948)).

[72] See, 
e.g., Tex. R. Civ. P. 
190.2(c)(2) (limiting parties in Level 1 cases to six hours of 
depositions).

[73] See, 
e.g., In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 763 (Tex. 2006) 
(holding four depositions did not waive arbitration as record did not show 
whether they were limited or extensive or whether they addressed merits or 
merely arbitrability). 

[74] Trammell 
Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 636 (Tex. 1997); see English v. Fischer, 660 S.W.2d 521, 
524 (Tex. 1983); “Moore” Burger, Inc. v. Phillips Petroleum 
Co., 492 S.W.2d 934, 936–37 (Tex. 1972); 
Wheeler v. White, 398 S.W.2d 93, 96 (Tex. 1965); Restatement (Second) of Contracts § 90 
(1979).

[75] In re 
Weekley Homes, L.P., 180 S.W.3d 127, 133–35 (Tex. 2005); accord, Meyer v. WMCO-GP, LLC, 
211 S.W.3d 302, 305 (Tex. 2006).

[76] First 
Options of Chi., Inc. v. Kaplan, 514 U.S. 
938, 943 (1995).

[77] See Van 
Indep. Sch. Dist. v. McCarty, 165 S.W.3d 351, 353 (Tex. 2005); First Valley Bank of Los Fresnos v. 
Martin, 144 S.W.3d 466, 471 (Tex. 2004); 
Jernigan v. Langley, 111 S.W.3d 153, 156 
(Tex. 2003); Equitable Life Assurance Soc’y 
of U.S. v. Ellis, 152 
S.W. 625, 628 (Tex. 1913).

[78] In re D. 
Wilson Constr. Co., 196 S.W.3d 774, 783 (Tex. 2006); EZ Pawn Corp. v. Mancias, 934 S.W.2d 
87, 89 (Tex. 
1996).

[79] In re 
Bruce Terminix Co., 988 S.W.2d 702, 704 (Tex. 1998).

[80] In re Bank 
One, N.A., 216 S.W.3d 825, 827 (Tex. 2007); In re D. Wilson Constr. 
Co., 196 S.W.3d at 783; In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 
763 (Tex. 2006); In re Serv. Corp. Int’l, 85 S.W.3d 171, 174 (Tex. 2002); 
In re Bruce Terminix Co., 988 S.W.2d at 704; In re Oakwood Mobile 
Homes, Inc., 987 S.W.2d 571, 574 (Tex. 1999); EZ Pawn Corp., 934 
S.W.2d at 89; Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 898–99 
(Tex. 1995).

[81] See In re 
Gen. Elec. Capital Corp., 203 S.W.3d 314, 316 (Tex. 2006); Sun 
Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987); 
Bocanegra v. Aetna Life Ins. Co., 605 S.W.2d 848, 851 (Tex. 1980); 
Mass. Bonding & Ins. Co. v. Orkin Exterminating Co., 416 S.W.2d 396, 
401 (Tex. 1967); Texas & P. Ry. Co. v. Wood, 199 S.W.2d 652, 656 
(Tex. 1947); Kennedy v. Bender, 135 S.W. 524, 526 (Tex. 1911); see 
also Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 
(7th Cir. 1995) (citing authorities showing that contract law generally holds 
waiver effective without proof of detrimental reliance).

[82] Mass. 
Bonding & Ins. Co. v. Orkin Exterminating Co., 416 S.W.2d 396, 401 
(Tex. 
1967).

[83] See 
Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 686–87 (1996); Allied-Bruce Terminix 
Cos. v. Dobson, 513 U.S. 265, 281 
(1995).

[84] In re 
Citigroup, Inc., 376 F.3d 23, 26 (1st Cir. 2004) (“We have emphasized that, 
to succeed on a claim of waiver, plaintiffs must show prejudice.”); Thyssen, 
Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir. 2002); 
Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 925 (3d Cir. 1992) 
(“[P]rejudice is the touchstone for determining whether the right to arbitrate 
has been waived . . . .”); Patten Grading & Paving, Inc. v. Skanska USA 
Bldg., Inc., 380 F.3d 200, 206 (4th Cir. 2004) (“[T]he dispositive question 
is whether the party objecting to arbitration has suffered actual prejudice.”) 
(internal quotations and italics omitted); Republic Ins. Co. v. PAICO 
Receivables, LLC, 383 F.3d 341, 346 (5th Cir. 2004) (“In addition to the 
invocation of the judicial process, there must be prejudice to the party 
opposing arbitration before we will find that the right to arbitrate has been 
waived.”); O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 356 
(6th Cir. 2003); Kelly v. Golden, 352 F.3d 344, 349 (8th Cir. 2003) (“The 
actions must result in prejudice to the other party for waiver to have 
occurred.”); Brown v. Dillard’s, Inc., 430 F.3d 1004, 1012 (9th Cir. 
2005); Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 
1482, 1490 (10th Cir. 1994); Ivax Corp. v. B. Braun of Am., Inc., 286 
F.3d 1309, 1316 (11th Cir. 2002) (“[W]e look to see whether, by [invoking the 
litigation process], that party has in some way prejudiced the other party.”) 
(internal quotations omitted).

[85] St. Mary’s 
Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., 969 F.2d 585, 590–91 (7th Cir. 1992); Nat’l 
Found. for Cancer Research v. A. G. Edwards & Sons, Inc., 821 F.2d 772, 
777 (D.C. Cir. 1987) (holding “a court may consider prejudice to the objecting 
party as a relevant factor among the circumstances that the court examines in 
deciding whether the moving party has taken action inconsistent with the 
agreement to arbitrate”).

[86] In re 
Weekley Homes, L.P., 180 S.W.3d 127, 130–31 (Tex. 2005); In re Kellogg 
Brown & Root, Inc., 166 S.W.3d 732, 738–39 (Tex. 2005); see also 
Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 87 (2002) (Thomas, J., 
concurring) (suggesting Supreme Court sometimes looks to federal law and 
sometimes law chosen by parties); Wash. Mut. Fin. Group, LLC v. Bailey, 
364 F.3d 260, 267 n.6 (5th Cir. 2004) (noting that whether state or federal law 
of arbitrability applies “is often an uncertain question”).

[87] Trammell Crow Co. No. 60 v. 
Harkinson, 944 S.W.2d 631, 636 (Tex. 1997); 
see English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983); “Moore” Burger, Inc. v. Phillips Petroleum 
Co., 492 S.W.2d 934, 936 (Tex. 1972); 
Wheeler v. White, 398 S.W.2d 93, 96 (Tex. 1965); Restatement (Second) of Contracts § 90 
(1979).

[88] Restatement (Second) of Contracts § 
87(2) (1981) (“An offer which the offeror should reasonably expect to induce 
action or forbearance of a substantial character on the part of the offeree 
before acceptance and which does induce such action or forbearance is binding as 
an option contract to the extent necessary to avoid injustice.”).

[89] Because we limit our review to the record 
before the trial judge, we do not consider the Defendants’ additional seven 
volumes of discovery exhibits filed after the arbitration award.

[90] 173 S.W.3d 565, 570; see also Green Tree 
Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 89 (2000) (holding that 
unconscionable arbitration fee would render clause unenforceable).

[91] See In Re Tyco Int’l Ltd. Sec. 
Litig., 422 F.3d 41, 46 (1st Cir. 2005) (holding defendant’s objections to 
arbitration before criminal trial waived his right to arbitration); Gilmore 
v. Shearson/American Exp. Inc., 811 F.2d 108, 112 (2d Cir. 1987) (holding 
party’s withdrawal of its prior motion to compel arbitration constituted express 
waiver of that right).

[92] See In re Vesta Ins. Group, Inc., 
192 S.W.3d 759, 764 (Tex. 2006) (citing Com-Tech Assocs. v. Computer Assocs. 
Int’l, Inc., 938 F.2d 1574, 1576-77 (2d Cir. 1991), in which arbitration was 
waived by request that did not come until 18 months after filing and 4 months 
before trial).

[93] Republic Ins. Co. v. PAICO Receivables, 
LLC, 383 F.3d 341, 346 (5th Cir. 2004) (punctuation omitted); accord, In 
re Tyco, 422 F.3d at 46 n.5 (“[A] party should not be allowed purposefully 
and unjustifiably to manipulate the exercise of its arbitral rights simply to 
gain an unfair tactical advantage over the opposing party.”); In re 
Citigroup, Inc., 376 F.3d 23, 28 (1st Cir. 2004); Subway Equip. Leasing 
Corp. v. Forte, 169 F.3d 324, 327 (5th Cir. 1999); PPG Indus., Inc. v. 
Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997); Doctor’s 
Assocs. v. Distajo, 107 F.3d 126, 134 (2d Cir. 1997) (“[P]rejudice as 
defined by our cases refers to the inherent unfairness-in terms of delay, 
expense, or damage to a party’s legal position-that occurs when the party’s 
opponent forces it to litigate an issue and later seeks to arbitrate that same 
issue.”).

[94] In re Tyco, 422 F.3d at 46 
n.5.

[95] See, e.g., Tenneco Inc. v. Enter. 
Prods. Co., 925 S.W.2d 640, 643 (Tex. 1996) (holding companies waived 
contractual right to approve assignments by treating assignee as full partner); 
Ford v. State Farm Mut. Auto. Ins. Co., 550 S.W.2d 663, 666 (Tex. 1977) (holding 
insurer waived contractual right to consent to settlement by denying liability 
under policy).

[96] See Prima Paint Corp. v. Flood & 
Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967) (“[T]he purpose of Congress 
in 1925 was to make arbitration agreements as enforceable as other contracts, 
but not more so.”).

[97] W. Wendell Hall, Standards of Review in 
Texas, 38 St. Mary’s L.J. 43, 
67 (2006).

[98] Tex. Civ. Prac. & Rem. Code § 
37.009 (“In any proceeding under this chapter, the court may award costs 
and reasonable and necessary attorney’s fees as are equitable and just.” 
(emphasis added)).

[99] See Tex. R. Evid. 801–806.

[100] See Nat’l Liab. and Fire Ins. Co. v. 
Allen, 15 S.W.3d 525, 529 (Tex. 2000) 
(hearsay); Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998) (declaratory 
fee award).

[101] In re Serv. Corp. Int’l, 85 S.W.3d 
171, 174 (Tex. 2002); In re Oakwood Mobile 
Homes, Inc., 987 S.W.2d 571, 574 (Tex. 
1999); In re Bruce Terminix Co., 988 S.W.2d 702, 703–04 (Tex. 1998).

[102] Brainard v. State, 12 S.W.3d 6, 30 
(Tex. 1999) (holding that in abuse-of-discretion standard “we defer to the trial 
court’s factual determinations if they are supported by the evidence and review 
its legal determinations de novo”); Walker v. Packer, 827 S.W.2d 833, 840 
(Tex. 1992) (“A trial court has no ‘discretion’ in determining what the law is 
or applying the law to the facts. Thus, a clear failure by the trial court to 
analyze or apply the law correctly will constitute an abuse of discretion . . . 
.”); see Hall, supra note 97, at 284 (“When the trial court’s 
findings involve [mixed] questions of law and fact, the appellate court reviews 
the trial court’s decision for an abuse of discretion. In applying the standard, 
the reviewing court defers to the trial court’s factual determinations if 
supported by the evidence and reviews its legal determinations de novo.”); 
cf. Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 
484 (5th Cir. 2002) (“This court reviews de novo a district court’s dismissal of 
a claim that a party waived its right to arbitrate.”); accord, Ivax 
Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1316 (11th Cir. 2002); 
Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 326 (5th Cir. 
1999).

[103] Brainard, 12 S.W.3d at 30; 
Walker, 827 S.W.2d at 840; see Hall, supra note 97, at 284; 
cf. Gulf Guar., 304 F.3d at 484; accord, Ivax Corp., 286 
F.3d at 1316; Subway Equip., 169 F.3d at 326.

[104] See Reliance Nat’l Indem. Co. v. 
Advance’d Temps., Inc., 227 S.W.3d 46, 50 (Tex. 2007) (“What might otherwise be a 
question of fact becomes one of law when the fact is not in dispute or is 
conclusively established.”); Hall, supra note 97, at 284 (“[A] 
trial court abuses its discretion [if the court] . . . fails to properly apply 
the law to the undisputed facts . . . .”).

[105] See supra Part VI.A.

[106] ___ S.W.3d at ___ (“But even if the Court 
is right and the reimbursement clause does not allow for recovery of all 
Defendants’ litigation attorney’s fees, an arbitration award would not be 
subject to being vacated if an arbitrator interpreted it to allow recovery of 
all the fees.”).

[107] The parties contract limited reimbursement 
to costs incurred in “seeking dismissal” of litigation, not costs incurred in 
preparing it for trial:
 
Inasmuch as this Agreement provides for mandatory 
arbitration of disputes, if any party commences litigation in violation of this 
Agreement, such party shall reimburse the other parties to the litigation for 
their costs and expenses including attorney’s fees incurred in seeking 
dismissal of such litigation. 
 
(emphasis added).

[108] See Preston v. Ferrer, ___ U.S. 
___, ___ (2008) (“A prime objective of an agreement to arbitrate is to achieve 
streamlined proceedings and expeditious results.”); Cabinetree of Wis., Inc. 
v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995) (noting that 
“the discovery provisions of the Federal Rules of Civil Procedure are more 
generous than those of the American Arbitration Association”); cf. Price v. 
Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1160 (5th Cir. 1986) (finding 
prejudice due to discovery as “discovery —whether meaningful or otherwise—is not 
available in arbitration”); Miller Brewing Co. v. Fort Worth Distrib. 
Co., 781 F.2d 494, 498 (5th Cir. 1986) (“A 
party to arbitration does not have a right to the pre-trial discovery procedures 
that are used in a case at law.”); Developments in the Law—Discovery, 74 
Harv. L. Rev. 940, 943 (1961) 
(noting expense of discovery as inconsistent with desire to 
arbitrate).

[109] The court of appeals affirmed on this 
basis. 173 S.W.3d at 570 (“Appellants did not provide any evidence of the work 
done, time spent, or costs incurred that would not have been done or incurred in 
anticipation of an arbitration hearing.”).

[110] Tex. Civ. Prac. & Rem. Code § 
171.021(b); see Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269 
(Tex. 
1992).

[111] Republic Ins. Co. v. PAICO Receivables, 
LLC, 383 F.3d 341, 346 (5th Cir. 2004) (internal citations and punctuation 
omitted).

[112] In re Vesta Ins. Group, Inc., 192 
S.W.3d 759 (Tex. 2006). 

[113] Two of the numerous defendants in Vesta 
initially objected to the remaining defendants’ motion to compel 
arbitration, but withdrew that objection before the hearing on the 
motion.

[114] Id. at 763.

[115] Id. 

[116] The defendants in Vesta had 
stipulated that all discovery obtained so far could be used in 
arbitration.

[117] See Tex. R. Civ. P. 
12.